STATE, Plaintiff-Respondent, v. TRONCA, Defendant-Appellant: RYAN, and another, Defendants.

RYAN, Plaintiff in error, v. STATE, Defendant in error.

*No. 76–425–CR. Argued June 7, 1978.—Decided June 30, 1978.*
(Also reported in 267 N.W.2d 216.)

For the appellant there was a brief by *William M. Coffey, Joseph M. Amidon,* and *Coffey & Coffey,* and oral argument by *William M. Coffey;* and the brief was joined in by *Gerald P. Boyle* for defendant Mark Ryan, with oral argument by *Michael A. I. Whitcomb,* all of Milwaukee.

For the respondent the cause was argued by *Maryann S. Calef,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, J.   This case arises out of charges of misconduct in public office.   Three defendants were charged, Mark W. Ryan, an alderman of the City of Milwaukee, Patrick Tronca, and Charles N. Wolfe. Each of them was charged with two counts of misconduct in public office, party to a crime, under sec. 946.12(3),[1] Stats., and sec. 939.05. All three defendants were found guilty on Count 2, and each of them was fined.[2] Tronca and Ryan have asked for review by this court.

---

[1] "946.12 Misconduct in public office.   Any public officer or public employe who does any of the following may be fined not more than $500 or imprisoned not more than one year or both:
" . . .
"(3)   Whether by act of commission or omission, in his capacity as such officer or employe exercises a discretionary power in a manner inconsistent with the duties of his office or employment or the rights of others and with intent to obtain a dishonest advantage for himself or another."

[2] Count 1 was dismissed after the preliminary examination for lack of probable cause.

Tronca filed an appeal from the judgment of conviction and from the order denying postconviction motions. A writ of error was issued to review the denial of Ryan's postconviction motion. The cases were tried together and have been consolidated for review in this court. Wolfe apparently has not sought review of his conviction, and the merits of his case are not before the court. Tronca and Ryan have filed a consolidated brief on this appeal.

The principal claims advanced therein are that nothing was done by Alderman Ryan which constituted an exercise of discretion and that, if he did in fact exercise discretionary power, he did not do so in a manner inconsistent with the duties of his office; that, even were the facts sufficient to show that Ryan, as a public officer, was guilty of misconduct, Tronca, as a private citizen, could not be a party to the crime of misconduct in public office; and that the misconduct in public office statute, sec. 946.12, Stats., is unconstitutional, because it is vague and overbroad.

Additionally, it is claimed that the application of sec. 939.05, Stats., the party-to-a-crime statute, when applied to misconduct in public office, aggravates the constitutional problem in both respects.

We conclude that none of these arguments has substantial merit. We affirm the judgment and orders sought to be reviewed.

The basic facts are not in dispute, and no argument is made that the evidence was insufficient to convict beyond a reasonable doubt if the law was properly applied by the trial court. The underlying facts show that Paul and Ada Lie were the part owners and operators of the Peking Gardens restaurant, which was located in the aldermanic district of Mark Ryan. Ryan was not a member of the committee of the common council which had the official authority to act in respect to removing restrictions on liquor licenses. However, it was acknowl-

edged that, in Milwaukee, a practice known as "aldermanic privilege" was recognized and honored by the licensing committee. Under this practice, it was extremely rare that action was taken on a liquor license over the objection of the local alderman, even though that alderman, strictly speaking, had no right to vote or participate in the committee's decision. The aldermanic privilege was specifically recognized in the recent case of *Ryan v. State,* 79 Wis.2d 83, 87, 255 N.W.2d 910 (1977). That case involved the same defendant Ryan who was a party to the present appeal.

The record shows that, when the Lies wished to obtain a Class B liquor license for their restaurant, they contacted Alderman Ryan. Only after Charles Wolfe contacted the Lies and received $4,500 from them, did Alderman Ryan approve the transfer of a liquor license to Peking Gardens restaurant. Under that license, the Lies commenced serving liquor in December 1973. This transaction was the basis for Count 1 of the criminal complaint. The complaint in that respect, however, was dismissed following the preliminary examination for lack of probable cause.

The basic facts outlined above have been recited in the briefs of both the state and the defendants.

The license obtained by the Lies after the transaction with Wolfe and with Ryan's approval contained a "service-bar-only" restriction, which meant that liquor could only be served to patrons seated at tables. In March of 1974, Ada Lie went to Wolfe in an attempt to have the restriction lifted so that bar service would be available in the restaurant. Wolfe stated that, for the sum of $1,500 the restriction could be lifted; and Wolfe told Paul Lie that only Alderman Ryan could see to it that the restriction was lifted. Ada Lie then met with Alderman Ryan, and the subject and contents of the conversa-

tion with Alderman Ryan appear in her testimony at trial:

"A I told him that I wanted my service bar restriction lifted, and it is costing me $1500, and I have the money with me, and I asked if he would okay it, and he said— if I have no objectors that he would okay it, then he explained to me what objectors were.

"Q What did he explain?

"A He said objectors were people from the neighborhood, people from the business, and they object to our operation. He said I should remove the objectors, and he said he can give me the okay. He said you have to remove the objectors. So these people took care of you the last time, so he asked, are you willing to do what they say, so I said—do you mean that if I paid him the $1500 that I remove all the objectors, and he said—that's what it takes."

The record additionally shows that the price for removing the restriction was raised to $2,500, because Alderman Ryan was offended because he believed that Ada Lie was attempting to bribe him directly.

On the day following the one on which the conversation between Ada Lie and Mark Ryan took place, Paul Lie paid $1,000 of the $2,500 to Wolfe. The money had previously been marked by agents of the State Department of Justice. Lie stopped at Tronca's residence, and a search there the following day revealed nine of the ten marked $100 bills. On the same day the money was paid, Wolfe, in the presence of Paul Lie, placed a call to a person he referred to as his boss, and it was established at trial that the person called was the defendant, Patrick Tronca.

Despite these efforts to have the "service-bar-only" restriction lifted, the record shows that the Lies never made an official application to the license committee and apparently no change was actually made in the restricted license which had been granted at an earlier time to the

Peking Gardens restaurant. It was on this evidence that the three defendants were convicted.

The basic position of the trial court was that the evidence showed that Ryan had exercised a discretionary power in a manner inconsistent with the duties of his office with the intent to obtain a dishonest advantage for Tronca and Wolfe and that all three of the defendants were parties to this basic crime.

The initial argument advanced by the defendants was that whatever Ryan did, it was not a discretionary power of office, because his informal aldermanic privilege to suspend, or in effect veto, action of the licensing committee was not a formal discretionary power officially conferred by statute. Counsel for the defendants contends that public officers such as Ryan have only such powers as are conferred upon them by statute and the only additional powers granted them by implication are those necessary for the exercise of duties expressly granted.

The question, then, is whether the power of aldermanic privilege which has been conferred upon an alderman by practice and usage in the City of Milwaukee is a discretionary power of office as that power is referred to in sec. 946.12 (3), Stats.

When that statute was considered in 1953, the notes of the Judiciary Committee on the Criminal Code carried the following comment:

"Subsection (3) states in effect that an officer or employe must act honestly in performing duties or exercising powers which involve discretion. If any officer or employe has discretion as to the time or manner in which to perform a duty or discretion as to whether or not to perform a function of his office or employment, he is guilty of misconduct only if he acts in a manner inconsistent with the duties of his office or employment or the rights of others and with intent to obtain a dishonest advantage for himself or another, that is, 'corruptly.'

Judicial or quasi-judicial functions call for the exercise of judgment, and if the officer acts honestly although with not the best of judgment, he is not guilty." *Judiciary Committee Report on the Criminal Code,* Wisconsin Legislative Council, February 1953, p. 176.

The defendants assert that the comments clearly demonstrate that a discretionary power can only be one which is official and formally delegated and that the powers exercised by virtue of the aldermanic privilege do not fit that category. It is true that the aldermanic privilege is not an officially conferred power of office, but it has been sanctioned by practice and usage and specifically found to be a fact of political life in municipal government in the City of Milwaukee in *State v. Ryan, supra.*

Neither the state nor the defendants have cited any cases from this or other jurisdictions which discuss in detail the applicability of informal but recognized discretionary powers to criminal misconduct in office. There are, however, a number of cases, some of which have been referred to by the parties, which construe similar statutes which use different operative phrases. These cases are instructive and persuasive, but by reason of the different terminology and nomenclature of the statutes construed are not in themselves controlling.

Two Wisconsin cases which arose under a former bribery statute are relevant, *Murphy v. State,* 124 Wis. 635, 102 N.W. 1087 (1905), and *State v. Hibicke,* 263 Wis. 213, 56 N.W.2d 818 (1953). In each of them the underlying statute made criminal the payment of money made with the intent to influence the vote, opinion, or judgment of a public officer in a matter then pending or which might be brought before the officer in his "official capacity."

In *Murphy v. State,* the defendant was an alderman of the City of Milwaukee who received money to influence

his vote on an ordinance. He argued that the proposed ordinance would have been void in any event, because the common council had no authority to permit public property to be used for private purposes. His claim was that the ordinance could not, therefore, have been before him in his official capacity. This court rejected that argument, reasoning that, even were the ordinance found to be a nullity, the council had a duty to act, even though the only proper action would have been to reject the ordinance. The defendant's official duty was, therefore, not to be measured with reference to the ultimate validity of the proposed action.

In *State v. Hibicke*, the court accepted the defense of the defendant constable, who was bribed in connection with obtaining a trailer park license. The court found that the constable had no duty in respect to recommending or reporting on trailer park licenses. There was nothing to show, as in the instant case, that the officer had any privilege which was equivalent to the aldermanic privilege of Ryan. Each of these cases are cited in 73 A.L.R.3d 374 (1976) for the general proposition that it is no defense to show that an officer had no authority in the particular circumstances to perform the act, if the act is within the general scope of his duties and he was acting under the color of authority. The rule is followed in its general form elsewhere.

In *United States v. Birdsall*, 233 U.S. 223 (1914), the court held that it is not necessary that an officer's action be prescribed by statute or any written rule—that official action could be simply an established usage or a common law type of power which gave sanction to informal procedures in exercise of authority.

In *Kable v. State*, 17 Md. App. 16, 299 A.2d 493 (1973), a police officer took money with the request that certain motor vehicle charges be *nolle prossed*. His defense was that the bribe could not have been for the

purpose of influencing him in his official duties, because only the prosecutor had the authority to dismiss the charge. The court rejected this defense, because the record showed that a practice and usage had developed whereby the police officer made recommendations to the prosecutor. The court therein held the term, "official duties," was broad enough to include corrupt action that in some way bore a relationship to his official duties, even though the act was technically beyond his legally prescribed responsibilities.

The same rationale was applied in *State v. Hendricks*, 66 Ariz. 235, 186 P.2d 943 (1947), where official duties were not implicated but the officer in the corrupt bargain purported to act under color of office.

The Arizona court held that the rationale of *Hendricks* was not applicable in a later case, *State v. Bowling*, 5 Ariz. App. 436, 427 P.2d 928 (1967). There, a defense was upheld when the facts showed that it was not a customary or an accepted usage for legislators to make recommendations for the granting or denial of liquor licenses. In essence, the legislator in *Bowling* was exonerated, because there was no proof of an established custom or usage equivalent to the aldermanic privilege which Ryan possessed in the case before us.

In *Commonwealth v. Avery*, 301 Mass. 605, 18 N.E.2d 353 (1938), a town selectman was found guilty of accepting a bribe to secure the employment of a doctor as a welfare physician, even though the employment of the doctor was not a matter which could be brought before him in his official capacity as selectman. The Supreme Judicial Court of Massachusetts recognized that a selectman exercises an influence on the management of town affairs which could not be measured by reference to express statutory definitions of official powers. It was held that he exercised the powers *de facto* and that the general bribery statute applied.

It is apparent from these cases that the powers of a public official, which are subject to control by various types of misconduct statutes, are not limited to expressly conferred powers but apply to *de facto* powers which arise by custom and usage and which are exercised under the color of office and which, by virtue of the office, tend to have a corrupt influence on public affairs.

Although we recognize the general rule relied upon by the defendants as stated in *State v. Schaller,* 70 Wis.2d 107, 233 N.W.2d 416 (1975), that penal statutes are to be strictly construed in favor of the accused, it is equally true that this rule of construction does not mean that only the narrowest possible construction must be adopted in disregard of the purpose of the statute. *See, United States v. Bramblett,* 348 U.S. 503 (1955).

In the instant case, the discretion which Ryan exercised was under the color of his office. It was a discretion recognized by a long period of custom and usage, and the power was one that had a substantial influence on the affairs of the municipal government of Milwaukee. It was a discretionary power of his office, which could be exercised corruptly, either by an act of omission or commission.

We also conclude that the argument made by the defendants—that there was in fact no exercise of the discretionary power by Ryan in this case—is unfounded.

The basis of defendants' argument is that at the most Alderman Ryan did no more than to agree to exercise power in the future, but the power was never exercised, because the Lies never made application to have the license restriction lifted.

The state takes the position that the statute should not be construed to require the fulfillment of a corrupt bargain before any criminal conduct can be said to occur.

It relies on a number of federal cases which, in the main, are based on statutory language somewhat different than that involved in the present case. The federal statutes generally make criminal the act of one who solicits or accepts anything of value in exchange for a promise to influence, or endeavor to influence, governmental conduct. They nevertheless are persuasive in support of the state's position.

Sec. 946.12(3), Stats., under which the defendants have been charged, is not as explicit as the federal statutes in respect to situations where a corrupt bargain was made but where circumstances did not impel its fulfillment. The Wisconsin statute does, however, prohibit the corrupt exercise of discretionary power "whether by act of commission or omission." By using such terms, it is apparent that the legislature prescribed a broad scope of conduct which could be misconduct in public office. *The Judiciary Committee Report on the Criminal Code* relied upon by the defendants states:

"Subsection (3) states in effect that an officer or employe must act honestly in performing duties or exercising powers which involve discretion."

In the instant case Ryan affirmatively acted under the color of office and under the *de facto* powers of the aldermanic privilege when he assured Lies and agreed to the proposition that he would not oppose the lifting of the liquor license restriction if money were paid to Wolfe. He exercised his powers of office affirmatively when he made that agreement. It was an agreement which could have been reached on an honest basis and on a rational consideration of the merits, but the agreement, an official act, was corrupt and dishonest. The agreement constituted the exercise of discretionary power within the meaning of the statute.

It is difficult to understand the logic of the defendants' further argument that the exercise of the discretionary power was not "inconsistent with the duties of his office." As the comment of the committee referred to above states, the statute requires "that an officer or employe must act honestly in performing duties or exercising powers which involve discretion."

The duties of common council members of the City of Milwaukee are set forth in part in the Milwaukee City Charter secs. 4.26 and 5.13. Sec. 4.26 provides that a common council member may not vote upon any matter in which he may be directly or indirectly interested. By telling the Lies that he would exercise his aldermanic privilege favorably to them only if money were paid to Wolfe, Ryan evinced his interest in the matter to be considered by the licensing committee. He in effect agreed not to vote or exercise his aldermanic privilege of vetoing possible license committee action. The effect of this was to affirmatively sanction possible license committee approval. This was contrary to the intendments of sec. 4.26 and was inconsistent with the duties of office. Sec. 5.13 of the Milwaukee City Charter provides criminal sanctions for any officer who for any consideration whatsoever agreed to vote affirmatively or negatively, or to refrain from voting, or to use his influence in any manner for a corrupt consideration. What Ryan did in the instant case was to bargain away his discretion, which was to be exercised for the benefit of his constituents generally, in exchange for dishonest consideration or advantage to Wolfe and Tronca. This was without doubt inconsistent with his duties of office.

Counsel for the defendants argues, correctly, that the statute provides, as separate elements of the crime, the requirement that the conduct be "inconsistent with the duties of his office" and the requirement that the con-

duct be done "with intent to obtain a dishonest advantage." He is also correct in asserting that there must be proof of each element. Both elements are proved here, albeit by the same transaction. The transaction with the Lies demonstrated conduct inconsistent with the duties of office. In addition, the transaction showed that it was done with the intent to gain a dishonest advantage for Tronca and Wolfe. Both elements of the crime were proved.

It is equally clear that Ryan's conduct was inconsistent with the rights of the Lies, because they were obliged to pay a large sum of money for the purpose of having their license application considered, when they had the right to have it considered on the merits without payment. However, counsel for the defendants is correct in his assertion that this latter element of the crime was not charged, nor apparently was it argued in the trial court; and we consider the state's reliance upon it inappropriate under the circumstances. The alternative element, "intent to obtain a dishonest advantage," was proved, and we find that proof sufficient.

Tronca argues that he could not be convicted as a party to a crime on the charge of misconduct in public office, because he is not a public officer. This court, with rare exceptions explainable in terms of legislative intent, has rejected the proposition that one must be capable of committing the substantive crime in order to be subject to criminal liability as a party to the crime under sec. 939.05, Stats. *See, State v. Ewald,* 63 Wis.2d 165, 174, 216 N.W.2d 213 (1974). Moreover, the *Judiciary Committee Report on the Criminal Code,* Wisconsin Legislative Council, February 1953, p. 5, states a general legislative intent to include cases under sec. 939.05, Stats., although it would be impossible for the person charged as a party to the crime to commit the substantive offense. The committee stated:

"This section does not require that all persons concerned in the crime be charged with the commission of it, but it provides that they may be. In a case where it would be ludicrous to charge the defendant with the actual commission of the crime, as where a woman has aided and abetted the rape of another woman, the defendant may be charged with aiding and abetting the crime."

There have indeed been cases in which this court has held that sec. 939.05, Stats., did not apply to a specific penal statute. Tronca cites *State v. Dried Milk Products Co-operative*, 16 Wis.2d 357, 114 N.W.2d 412 (1962). The issue in that case was whether the owner of the truck, as opposed to the driver, without specific proof of unlawful intent on the owner's part, could be charged as a party to the crime of driving an overloaded truck. The court held that sec. 939.05 had no application to the overload statutes, because that statute specifically provided for the vicarious liability of the owner.

In general, it can also be said that, where the legislative intent is demonstrated by a specific provision within a statute to impose vicarious liability or where the legislative intent is otherwise clear, the general party-to-a-crime statute is not applicable. Such limitations are not apparent here, and the general admonitions of the framers of the criminal code indicate that the party-to-a-crime statute is applicable unless legislative intention to the contrary is either explicit or implicit in the statute.

Even under this principle, the defendants argue that party-to-a-crime is not applicable in the instant case. They assert that, since sec. 946.12, Stats., does not explicitly penalize the aider or abettor or conspirator who operates in conjunction with a public officer, no liability should be permitted under the party-to-a-crime statute.

Defendant points out that, where bribery penalties are imposed, *e.g.*, sec. 946.10, Stats., criminal liability falls

on both the public officer and the person who offers a bribe. The argument apparently is that, had the legislature intended to impose criminal liability on one who is a party to official misconduct, it would have specifically provided for such liability, as it did in respect to the bribery statutes. We think the rationale based on the bribery statutes inappropriate, because those statutes impose criminal sanction on citizens who offer a bribe. They do not purport to deal with an individual such as Tronca, who operates as the public officer's partner in illegal conduct or as a go-between, as Wolfe and Tronca did in the instant case. The situations are so unlike that it is not reasonable to infer from the bribery statute a statutory intent which would be applicable to one who is charged with party to the crime of official misconduct.

We conclude, consistent with the general policy of the criminal law and the consistent application of sec. 939.05, Stats., by this court to all crimes except those where the legislative intent was clearly to the contrary, that the charge of party to the crime was appropriate in the instant case. *See generally, Impossibility of Consummation of Substantive Crime as Defense in Criminal Prosecution for Conspiracy or Attempt to Commit Crime,* 37 A.L.R.3d 375 (1971).

The defendants raise three constitutional arguments. They argue that sec. 946.12(3), Stats., together with sec. 939.05, is unconstitutionally vague; that sec. 946.12 (3) is in itself unconstitutionally vague; and that the two statutes, when taken together, are unconstitutional in still another respect in that they are overbroad. We conclude that each of these arguments is without merit.

In the recent case of *Ryan v. State, supra,* we restated this court's understanding of the claim of unconstitutional vagueness. We said, citing other cases:

" 'The test of vagueness of a penal statute is whether it gives reasonable notice of the prohibited conduct to those who would avoid its penalties. . . .

" 'Vagueness rests upon the procedural due-process requirement of a fair notice and the defendant cannot hypothesize fact situations but is confined to the conduct charged when it is so obviously within the zone of prohibited conduct that no reasonable man could have any doubt of its criminality. . . .' *State v. Driscoll*, 53 Wis.2d 699, 701–02, 193 N.W.2d 851 (1972). *Accord, State v. Courtney*, 74 Wis.2d 705, 709–11, 247 N.W.2d 714 (1976)." *Ryan v. State, supra* at 90.

In that case, we held that the companion subsection of sec. 946.12, Stats., was not unconstitutionally vague. We said that a statute will be held to be vague in the constitutional sense only if it is so obscure that persons of common intelligence must necessarily guess at its meaning and differ as to its applicability. *See also, State v. Starks*, 51 Wis.2d 256, 186 N.W.2d 245 (1971).

A statute must also define the crime with sufficient definiteness that there is an ascertainable standard of guilt. *Jones v. State*, 55 Wis.2d 742, 200 N.W.2d 587 (1972). The statute need not meet impossible standards of specificity, however, to survive a challenge under the vagueness doctrine. *State v. Zwicker*, 41 Wis.2d 497, 164 N.W.2d 512 (1969), *appeal dismissed* 396 U.S. 26. All that is required is a fair degree of definiteness. *State v. Courtney*, 74 Wis.2d 705, 247 N.W.2d 714 (1976).

It is argued that one aspect of the vagueness problem posed in this case is the uncertainty in respect to what persons come within the scope of the act. We have said, however, that a statute is not impermissibly vague if there is sufficient warning to one wishing to obey the law that his conduct comes near the proscribed area. *State v. Evjue*, 253 Wis. 146, 33 N.W.2d 305 (1948). The United States Supreme Court in *Grayned v. City of Rockford*, 408 U.S. 104 (1972), stated that, even if there

be an inherent vagueness of some terms utilized by a statute, the vagueness may be dispelled by other provisions of the same statute.

Defendant's argument is that the term, "discretionary power," is necessarily vague. It is indeed, as we pointed out, an all-encompassing term and sweeps broadly. It is defined, however, in other terms of the statute. The act or omission must be done in the person's capacity as a public officer or employee or under color of office. It must be exercised in a manner inconsistent with the duties of office or the rights of others, and it must be done with the intent to obtain a dishonest advantage either for the actor or for another.

The statute, read reasonably in its entirety, clearly gives notice of the nature of the penalties and the applicability of the statute to the conduct engaged in by each of the defendants. The statute is not unconstitutionally vague.

Moreover, the defendants herein have no standing to challenge the statute on the ground that it did not give notice, for the evidence showed that each of them was aware of the criminality of his conduct and the consequences. Tronca was secretive in his telephone conversation with Paul Lie and refused to identify himself. He merely stated to Lie that "Charlie [Wolfe] knows me." Wolfe told Lie that the payments would have to be made in cash because he "did not want to go to jail." Ryan, according to the record, took umbrage at what he thought to be Ada Lie's attempt to bribe him directly and insisted that the payment be made to Wolfe. There is no intimation in the record that Ryan did not fully understand the basic illegality of the entire transaction. Each of the defendants was well aware that he was approaching the area proscribed by the statute. Apparently they were not bent upon obedience of the law. The conduct of each

of them was so clearly within the proscription of the statute that any reasonable person would know that it was prohibited.

The additional argument that the conjunction of sec. 946.12(3), Stats., with sec. 939.05 results in vagueness is equally ill-founded. Defendants' argument rests upon the conception that there is an inherent contradiction between the special liability that is imposed upon public officers and the making of private citizens parties to the crime. We see none. The party-to-a-crime statute broadens the scope of criminal liability to cover persons who aid and abet or conspire with public officers. In the absence of some clear legislative intent to limit the liability substantively arising under sec. 946.12(3) to public officers, we conclude that the party-to-a-crime statute is as adaptable to the misconduct-in-office statute as it is to other statutes which define criminal conduct. We see this as merely a boiler-plate party-to-the-crime situation.

The argument that the statute is unconstitutionally overbroad is imaginative but specious. The defendants correctly assert that legitimate lobbying for the purpose of influencing legislative or executive decisions is protected by the first amendment to the Constitution of the United States. From that premise, which we accept, defendants move to the non sequitur that:

"Thus, a lobbyist would be chargeable with this offense [party-to-the-crime misconduct-in-public office] for efforts to influence a legislator to achieve a desired political result and to take action toward that end, where the legislator exercises his vote in violation of his duties and with the requisite corrupt intent."

We do not see the logic of this argument. The defendants' basic constitutional assumption is, however, correct. The problem of overbreadth arises when the

language of the statute, given its normal meaning, is so broad that the sanctions of the statute may apply to conduct which the state is not entitled to regulate. *State v. Starks, supra,* at 263. In such situations, unlike a situation where the vagueness doctrine is implicated, a defendant may hypothesize situations where the statute is so broad that it would chill legitimate activities and apply to fact situations where the regulation sought to be imposed would violate fundamental first-amendment rights. A statute which can be so construed may cause others to refrain from a legitimate exercise of free speech. *See, Herzbrun v. Milwaukee County,* 504 F.2d 1189, 1193 (7th Cir. 1974).

The overbreadth doctrine is based on the requirement of substantive due process and has the effect of preventing the limiting, by indirection, of constitutional rights. *State v. Driscoll,* 53 Wis.2d 699, 193 N.W.2d 851 (1972). Lobbying, although subject to some regulation, when carried out legitimately is entitled to constitutional protection as a first-amendment right; but the mere recitation of a possible unconstitutional application of the statute to lobbying does not lead to the conclusion that the statute is unconstitutionally overbroad. The example cited above from the defendants' brief is bizarre, and prosecution would not be brought except in a case of the most flagrant abuse of prosecutorial discretion. The example assumes that a lobbyist who for legitimate purposes by legitimate means seeks to have certain legislative action taken would be prosecuted and found guilty under this statute if a legislator by consistent but unrelated conduct exercised his vote in violation of his duties with a corrupt intent. By no stretch of the imagination, under the skeletal hypothesis of defense counsel counsel is there anything to show a conspiracy, an aiding, an abetting, or any other factors that would trigger a party-to-the-crime charge. If there were, the conduct would

fall within the ambit of the statutes and the lobbyist, as well as the legislator, would be indulging in conduct not protected by the first amendment.

In *Herzbrun, supra,* the Court of Appeals for the Seventh Circuit noted that the overbreadth doctrine is strong medicine and that the overbreadth of the statute "must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." (at 1195)

It is apparent in the instant case that the lobbying hypothetical raised by the defendants is not real or substantial in relation to the indisputably legitimate purpose and scope of the statute. No prosecutor could reasonably apply the statute to lobbying activities of a legitimate nature. The statute would be applicable only if the lobbyist indulged in such conduct in conjunction with the misconduct of the public officer that the situation established a substantial relationship to the evil proscribed by the statute. True, a lobbyist who indulges in activity identical to that of Wolfe and Tronca and who served as go-between between the public officer and those who sought to buy his influence would be within the proscription of the statute, but no legitimate lobbying activity is chilled or jeopardized by the statute and the application of the party-to-the-crime principle to it.

We conclude that the activities of the defendants in this case fall within the proscriptions of sec. 946.12(3), Stats. The conduct of Ryan was the exercise of a discretionary power in a manner inconsistent with the duties of his office. Tronca, who was not a public officer, but who actively participated in the transaction, was properly charged and convicted of being party to the crime. The statutes neither separately nor in conjunction with each other are unconstitutionally vague or overbroad.

The judgment of conviction of Tronca is affirmed, and the orders denying the postconviction motions of the defendants Ryan and Tronca are affirmed.

*By the Court.*—Judgment and orders affirmed.