STATE of Wisconsin, Plaintiff-Respondent,

V.

Robert LEDERER, Defendant-Appellant.†

Court of Appeals

*No. 80–113–CR. Submitted on briefs September 10, 1980.—
Decided October 28, 1980.*
(Also reported in 299 N.W.2d 457.)

† Petition to review denied.
BEILFUSS, C.J., and STEINMETZ, J., took no part.

For the appellant, the cause was submitted on the briefs of *Stephen M. Glynn* and *Waring R. Fincke* and *Shellow & Shellow,* of Milwaukee.

For the respondent, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Dorothy H. Dey,* assistant attorney general.

Before Decker, C.J., Moser, P.J., and Cannon, J.

CANNON, J.   Defendant was convicted of third degree sexual assault contrary to sec. 940.225(3), Stats. Defendant challenges: the constitutionality of the consent definition as well as the sufficiency of evidence presented to establish that the victim had not consented; the adequacy of discovery of medical reports, psychiatric examinations, and past addresses; the adequacy of the jury instructions; and the failure to admit certain statements of the victim. Defendant finally contends that a new trial should be granted in the interests of justice. We find no error and affirm.

On July 11, 1978, defendant telephoned the prosecutrix at her residence. At the suggestion of the defendant, the prosecutrix agreed to inspect a residence for rental purposes. The prosecutrix met the defendant at a service station where she was dropped off by her roommate. Before leaving with the defendant, the prosecutrix took down the license number of defendant's van and gave it to her roommate. The prosecutrix got into defendant's

van, and they drove to an unfurnished home in River Hills.

At the home, defendant began to disrobe the prosecutrix. The prosecutrix objected and pushed defendant's hand away. The defendant allegedly told her that it would be worse if she fought. She permitted the defendant to disrobe her. Defendant performed an act of sexual intercourse, despite the verbal protestations of the prosecutrix. Defendant fell asleep on top of the prosecutrix. When defendant awoke in the early hours of July 12, 1978, defendant performed a second act of sexual intercourse. Defendant again fell asleep with his arm and part of his body across the prosecutrix. A third act of intercourse was performed when defendant awoke, as well as an act of fellatio. Defendant then took several photographs of the prosecutrix in the nude. Acts of sexual intercourse and fellatio were again performed. Defendant then drove the prosecutrix home.

At trial, testimony was produced regarding the photographs of the prosecutrix in the nude found at the residence. Testimony was produced regarding the bedding found at the residence and the tests performed for saliva, blood and semen on the bedding. Testimony was also presented about a medical report prepared at Family Hospital. The trial court denied defendant's motion to dismiss at the close of the state's case. The defense rested without calling any witnesses. Judgment on the guilty verdict was entered October 12, 1979. Post-conviction motions were denied January 16, 1980.

The following contentions are raised on appeal:

- (1) that sec. 940.225(3), Stats., which proscribes nonconsensual intercourse, is facially overbroad and unconstitutional;
- (2) that the trial court erred in failing to dismiss for insufficient evidence on count two;

(3) that the trial court erred in admitting testimony regarding a medical report prepared at Family Hospital;

(4) that the trial court erred in refusing to order the prosecutrix to submit to a mental examination;

(5) that the trial court erred in refusing to order discovery of the prosecutrix's past addresses;

(6) that the trial court erred in refusing to specially instruct the jury on the prosecutrix's prior inconsistent statements;

(7) that the trial court erred in excluding testimony regarding the prosecutrix's statement that she did not want the defendant to go to jail; and

(8) that a new trial should be granted in the interests of justice.

We find these contentions to be without merit and affirm.

## I. CONSTITUTIONALITY OF SEC. 940.225(3), STATS.

Defendant asks us to determine that sec. 940.225(3), Stats. is constitutionally infirm for overbreadth. Defendant contends that application of the definition of consent contained in sec. 940.225(4) could subject an individual to punishment for engaging in consensual sexual activities where no testimony was produced regarding acts or words which evidenced freely given consent. We do not agree.

A statute will be found overbroad where "the language of the statute, given its normal meaning, is so broad that the sanctions of the statute may apply to conduct which the state is not entitled to regulate." *State v. Tronca,* 84 Wis.2d 68, 88–89, 267 N.W.2d 216, 225 (1978). Where statutory overbreadth is at issue, the challenging party is permitted to hypothesize situations where the statute might curtail legitimate activities.

*Id.* at 89, 267 N.W.2d at 225. However, the statutory infirmity must be both real and substantial in relation to the sweep of the legislation. *Id.* at 90, 267 N.W.2d at 226.

The plain terms of sec. 940.225(3), Stats. defines third degree sexual assault as sexual intercourse *without consent.* Consent is defined by sec. 940.225(4), as "words or overt actions by a person who is competent to give informed consent indicating a freely given agreement to have sexual intercourse or sexual contact."

The statutory definition of consent when read in conjunction with other statutory provisions has been challenged for vagueness and for shifting the burden of proof from the state to the defendant. *Gates v. State,* 91 Wis.2d 512, 283 N.W.2d 474 (Ct. App. 1979). We rejected these constitutional challenges. *Id.* at 518, 520, 283 N.W.2d at 477, 478.

We reject defendant's contention that a defendant could be convicted under sec. 940.225(3), Stats., for engaging in consensual sexual relations. The plain terms of the statute require that the state must prove that the act of sexual intercourse must be without consent. In *Gates, supra,* at 520, 283 N.W.2d at 477, this court stated that for conviction for second degree sexual assault "[t]he State must introduce evidence that there was no consent, and this evidence must be sufficient to convince the jury beyond a reasonable doubt." Our supreme court has also determined that "[t]he plain wording of the statutory definition of consent demonstrates that failure to resist is not consent; . . . ." *State v. Clark,* 87 Wis.2d 804, 815, 275 N.W.2d 715, 721 (1979). We hold that these definitions of consent apply equally well to third degree sexual assault. In so defining consent the legislature has relieved the state of the burden of proving that the victim resisted in order to establish that the act was nonconsensual.

Defendant contends that two parties may enter into consensual sexual relations without manifesting freely given consent through words or acts. We reject this contention as we know of no other means of communicating consent.

Defendant additionally challenges sec. 940.225(3), Stats. as creating a strict liability offense where no knowledge or intent is required for conviction. Violation of sec. 940.225(3) subjects an offender to a severe punishment. Although severity of punishment is often indicative of the legislature's intent to create a strict liability offense, *State v. Collova,* 79 Wis.2d 473, 482, 255 N.W.2d 581, 585 (1977), we do not conclude that the legislature is precluded from creating a strict liability offense where substantial penalties are to be imposed. *See Redepenning v. State,* 60 Wis.2d 471, 480–81, 210 N.W.2d 673, 678 (1973) ; *Flowers v. State,* 43 Wis.2d 352, 359–60, 168 N.W.2d 843, 847 (1969).

We hold that the legislature has provided a sufficient standard to distinguish criminal from noncriminal activities. We, accordingly, reject defendant's constitutional challenge on the grounds of overbreadth.

## II. INSUFFICIENCY OF THE EVIDENCE

The defendant challenges the trial court's denial of the motion to dismiss both legally and factually. We reject these challenges.

Defendant first asserts that the trial court applied a subjective rather than objective standard to the issue of consent. We have reviewed the challenged statement[1]

---

[1] The trial court stated:

The testimony thus far is that she did not verbally consent. Whether her abilities and behavior during the course of these proceedings can be considered as overt acts indicating consent have to be determined by the jury, and it seems to me that that is a

of the trial court and determine that defendant's contention is entirely without merit.

Defendant next asserts that the evidence offered on count two[2] was insufficient to establish that the acts of fellatio were performed without the consent of the prosecutrix. We do not agree.

In reviewing a challenge to the sufficiency of the evidence "the question is whether the evidence, considered most favorably to the state, is 'so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as beyond a reasonable doubt.'" *State v. Clark, supra,* at 813–14, 275 N.W.2d at 720. [Citation omitted.]

The record discloses that the prosecutrix objected when the defendant initially disrobed her and continued to object throughout the night when defendant performed the various acts of sexual intercourse. The record further discloses that the prosecutrix testified that when asked to open her mouth prior to the performance of the act of fellatio she did not, but instead turned her head away and only complied when the defendant took her head in his hands. These actions on the part of the prosecutrix can hardly be said to be manifestations of consent, particularly when viewed together with the threat of the defendant that things would be worse if she did not comply. "No" means no, and precludes any finding that the prosecutrix consented to any of the sexual acts performed during the night.

---

credibility and fact determination that has to be made by the jury, and if the jury believes [the prosecutrix] in everything that she said concerning her lack of consent, the jury could find the defendant guilty beyond a reasonable doubt. Therefore, I'm going to deny the motion at this point.

[2] Defendant concedes that sufficient evidence was presented on count 1.

## III.  ADMISSION OF TESTIMONY OF
### MEDICAL REPORT

Defendant challenges the admission of the testimony of a nurse regarding a medical report prepared at Family Hospital Sexual Assault Treatment Center after an examination of the prosecutrix as violative of his rights to due process. The medical report was not admitted.

We first examine the circumstances of its admission. The existence of the Family Hospital report was first disclosed to the state during the cross-examination of the prosecutrix on the first day of trial, May 21, 1979. On May 22, 1979, the state informed the court that it planned to call a nurse from Family Hospital. On May 23, 1979, the defendant was given a copy of the report and notified that the nurse would testify over defendant's objection. The nurse was permitted to testify and defendant was permitted to examine the report.

The trial court's determination on a motion for a new trial on newly discovered evidence will only be reversed for an abuse of discretion. *State v. Sarinske,* 91 Wis.2d 14, 37, 280 N.W.2d 725, 735–36 (1979).

We acknowledge that suppression of exculpatory evidence may be violative of defendant's due process rights. *Rohl v. State,* 90 Wis.2d 18, 29, 279 N.W.2d 722, 725 (Ct App. 1979), *modified,* 96 Wis.2d 621, 292 N.W.2d 636 (1980). However, the prerequisites for granting a motion for suppression are as follows:

(1)  the State failed to produce some evidence;
(2)  the evidence not produced was in the sole knowledge or control of the State;
(3)  the evidence was favorable to the defendant; and
(4)  the evidence was material to guilt or innocence. *Id.* at 29–30, 279 N.W.2d at 725.

Application of these standards to the instant case mandates affirmance of the trial court. We agree with the trial court's conclusion that the evidence was not in the sole knowledge or control of the state, and was turned over to the defendant as soon as it was received.[3]

As discussed earlier, the state only learned of the existence of the medical report at the cross-examination of the prosecutrix. A report was obtained the next day, and was turned over to the defense immediately.

Defendant asks us to conclude that due to the special nature of Family Hospital's Sexual Assault Treatment Center, knowledge or control by the hospital is to be deemed knowledge or control by the state. This we refuse to do. We are not persuaded that either the execution of a release by the prosecutrix or the ease of discovery by the state alters the separateness of their relationship.

For these reasons, we hold that the trial court committed no error in admitting the testimony regarding the report.

### IV. PSYCHIATRIC EXAMINATION

Defendant appeals from the denial of his motion to order a psychiatric examination of the prosecutrix. Defendant maintains that a psychiatric report is necessary to assess the victim's credibility. This necessity is al-

[3] The trial court has concluded that the report could only be deemed exculpatory through a process of mental gymnastics. These gymnastics were successfully performed by the defense. The defense points to a statement of the victim regarding oral intercourse and cunnilingus. This is the only time these claims were presented. The defendant correctly asserts that this was a matter relating to the credibility of the victim and accordingly, was of an exculpatory nature. *See Nelson v. State,* 59 Wis.2d 474, 480–81, 208 N.W.2d 410, 413 (1973). This, however, does not affect our ultimate disposition of this issue.

legedly created by the noncooperation of the victim and her relatives and friends, as well as by a belief that the victim is fantasizing and fabricating the entire incident. We hold that these reasons do not provide adequate justification for ordering a psychiatric report and affirm.

At the outset we recognize the substantial imposition on the victim of such an examination. We consider the comments of the Tennessee Supreme Court to be particularly expressive of the inherent problems in this area:

A woman raped is shorn of all her dignity. She is the victim of the most humiliating, degrading and debasing of all crimes. We know judicially that an alarming percentage of rape victims never make public complaint. This must be attributed in substantial part to the fact that she is subjected to examination and cross-examination on the most intimate details of the penetration and must testify to matters that are not even discussed among intimate friends, but are the legitimate subject of inquiry in a courtroom crowded with the participants, the court's retinue and the curiosity seekers. *Forbes v. State,* 559 S.W.2d 318, 320 (Tenn. 1977).

Our supreme court has acknowledged that where the mental capacity of the witness is at issue, the trial court may in the exercise of its discretion, order a psychiatric examination. *State v. Miller,* 35 Wis.2d 454, 471, 151 N.W.2d 157, 165 (1967). The exercise of this discretion is, however, subject to limitation:

Because of the possible indignity of such an examination and the natural reluctance of persons to appear as witnesses if they were to be subjected to such examination, we believe a *strong and compelling* reason should appear before a trial court in the exercise of its discretion should order a medical examination even as a condition of testifying at the trial. [Emphasis added.] *Id.* at 471–72, 151 N.W.2d at 165.

Defendant contends that a different standard is to be applied where, as here, the psychiatric examination is

sought to assess the witness' credibility rather than the witness' capacity to testify. We do not agree.

Although the Wisconsin courts have not directly addressed this issue, other courts have concluded that the same compelling reason standard is apposite. *See Forbes v. State, supra,* at 321; *Ballard v. Superior Court,* 64 Cal. 2d 159, 176, 49 Cal. Rptr. 302, 313, 410 P.2d 838, 849 (1966). Further guidance may be gleaned from the Wisconsin court's reluctance to even admit psychiatric testimony on witness credibility. *Hampton v. State,* 92 Wis.2d 450, 456, 285 N.W.2d 868, 871 (1979). The Wisconsin Supreme Court, however, concluded that such admission was not precluded, but was to be at the discretion of the trial court. *Id.* at 456, 285 N.W.2d at 872.

The trial court, here, properly exercised its discretion when it concluded:

I don't think that a showing has been made here that there is any doubt as to this young woman's mental capacity as a witness. The only question is whether her version of what occurred was true or not.

It seems to me that is exactly the function of the jury. That is the question of credibility and weight. If the question is whether they believe her or not, the ALR annotation and some of the cases makes it quite clear that that is exactly the function of the jury and that a psychiatrist or psychologist can only base an opinion on his examination and what would be his expert speculation and opinion.

The cases cited hold that there was no abuse of discretion when the victim was as young as ten years of age, for instance, when previous false sexual assault accusations had been made, when a person had a history of prior mental difficulty, where the history of the parties indicated years of bitter domestic dispute prior to the accusation.

. . . .

It seems to me that the Wisconsin Supreme Court's holding that to require prosecuting witnesses in these kinds of cases to be required to submit to psychological

evaluations would certainly affect witness' reporting such offenses and being willing to testify at the trial.

I think that if the prosecutrix in this case is willing and does submit to a psychiatric evaluation voluntarily, that's one thing. I don't think on the basis of this record I can compel her to do so, and therefore the motion is denied.

We have reviewed the record and find it devoid of any justification for ordering a psychiatric examination. We, accordingly, find these conclusions of the trial court to be in accord with the principles discussed herein and affirm.

## V. PRETRIAL DISCOVERY OF PAST ADDRESSES

We are additionally asked to find error in the trial court's denial of defendant's motion for pretrial discovery of the past addresses of the prosecutrix. Defendant argues that the denial of access to this information as well as the inability to contact the prosecutrix hampered adequate preparation of the defendant's case, and violated his constitutional right to confrontation. We do not agree.

In support of his argument, defendant cites ABA Project on Minimum Standards of Criminal Justice, Discovery and Procedure Before Trial, Sec. 2.5(2): Approved Draft, 1970 which provides:

Discretionary disclosures (a) Upon a showing of materiality to the preparation of the defense, and if the request is reasonable, the court in its discretion may require disclosure to defense counsel of relevant material and information not covered by sections 2.1, 2.3 and 2.4.

We find the following limitations placed upon the operation of this section: first, it is subject to the discretion of the trial court; second, the information must be ma-

terial; and third, the request must be reasonable. It is well-established that a discretionary order will not be reversed if any reasonable basis exists for the order. *Littmann v. Littmann,* 57 Wis.2d 238, 250, 203 N.W.2d 901, 907 (1973).

These standards require review of the trial court's determination. In denying the motion for pretrial discovery, the trial court concluded:

> Well, as I said earlier, I appreciate the difficulties involved in defending a case of this sort, but I do not see where I have any authority to order the district attorney to turn over any information that is either not exculpatory or within the discovery statutes. I don't think I can require the district attorney to turn over information that might be helpful or might provide leads, particular [*sic*] when it is speculative at best. I just do not. I feel that I do not have the authority to do that. I don't know how I can require him to turn over that information, particularly where the complaining witness is opposed to it.

We concur in the trial court's conclusion that the mere possibility that the past addresses *might* produce some evidence helpful to the defense is not enough to justify this intrusion into the victim's past. In the absence of some more specific reasons justifying disclosure, we must defer to the trial court.

## VI. PRIOR INCONSISTENT STATEMENTS

Defendant maintains that the trial court erred in failing to specially instruct the jury on prior inconsistent statements. This instruction was allegedly made necessary due to inconsistent statements by the victim as to whether she had been threatened by Dr. Lederer while in his van. On cross-examination, she testified that she had not been threatened and did not believe she had ever told Sgt. Richter anything to the contrary. However,

Sgt. Richter testified that she had. We acknowledge that this constitutes a prior inconsistent statement, however, we hold the trial court committed no error in failing to specially instruct on the inconsistency.

■

On review, this court has applied the following standard to challenges to jury instructions:

> A trial court has wide discretion as to instructions. If the instructions of the court adequately cover the law applicable to the facts, this court will not find error in the refusal of special instructions even though the refused instructions themselves would not be erroneous. *State v. Pruitt*, 95 Wis.2d 69, 80–81, 289 N.W.2d 343, 348 (Ct. App. 1980).

Defendant requested that the trial court instruct the jury using Wis J I—Criminal 320. The trial court refused, as the instruction no longer correctly stated the law. The trial court instead read Wis J I—Criminal 300 and 305 on credibility, although no special instruction on impeachment by prior inconsistent statements was given.

The special treatment urged by defendant and contained in Wis J I—Criminal 320 has been disavowed in *Gelhaar v. State*, 41 Wis.2d 230, 163 N.W.2d 609 (1969), *cert. denied sub nom. Gelhaar v. Wisconsin*, 399 U.S. 929 (1970). The *Gelhaar* court held that prior inconsistent statements are to be considered by the jury as substantive evidence and that case law holding that they are to be limited to use as impeachment evidence was overruled. *Id.* at 240–41, 163 N.W.2d at 614. Subsequently, the *Gelhaar* rule was broadened by the adoption of sec. 908.01(4)(a)1, Stats. *See Vogel v. State*, 96 Wis.2d 372, 381–86, 291 N.W.2d 838, 843–45 (1980). We have reviewed the instructions given by the trial court, and conclude that they adequately state the law applicable to the facts. Although no special attention was drawn to the prior inconsistent statements, we determine that

under the ruling in *Gelhaar* and the subsequent adoption of sec. 908.01(4)(a)1, no such treatment need be made. The jury was entitled under the instructions given to determine the weight to be accorded the victim's statements. Accordingly, we affirm.

## VII.  ADMISSIBILITY OF STATEMENT OF PROSECUTRIX

We are next asked to find error in the exclusion of the prosecutrix's statement that she did not want the defendant to go to jail. The statement was made at a photographic identification procedure at the home of District Attorney Michael Malmstadt. The statement was made after identifying the picture of the defendant. The defendant argues that the statement is relevant to the issue of the prosecutrix's consent. The trial court found it neither relevant nor material. We agree.

We acknowledge considerable discretion to be accorded the trial court in assessing the relevance of a particular piece of evidence. Furthermore, we will not reverse this determination absent an abuse of discretion. *Chart v. General Motors Corp.*, 80 Wis.2d 91, 102, 258 N.W.2d 680, 684 (1977).

After hearing the arguments of counsel for both sides, the trial court concluded: "I, frankly, don't see what that's got to do with whether the act occurred or not under the circumstances and which have been described any more than had she said, I want him locked up for the rest of his life, would have." We fully concur in this conclusion and affirm.

## VIII.  NEW TRIAL

The defendant asks us to exercise our discretionary authority pursuant to sec. 752.35, Stats., and order a new

trial. In support of this request, defendant cites the absence of evidence of threats, violence or force and the occurrence of allegedly prejudicial errors during the trial. We find these contentions to be without merit.

A new trial in the interests of justice will only be granted by this court where we are convinced "that there has been a probable miscarriage of justice, that the defendant should not have been found guilty, and that a new trial would lead to a different result." *Schultz v. State,* 87 Wis.2d 167, 174, 274 N.W.2d 614, 617 (1979). We are not convinced that any of these grounds are presented here, and we refuse to grant a new trial.

*By the Court.*—Judgment and order affirmed.