STATE of Wisconsin, Plaintiff-Respondent,

v.

Samuel M. MUNOZ, Defendant-Appellant.†

Court of Appeals

*No. 95–0922–CR. Submitted on briefs January 2, 1996.—Decided February 27, 1996.*

(Also reported in 546 N.W.2d 570.)

---

†Petition to review denied.

---

For the defendant-appellant the cause was submitted on the briefs of *Carlson & Huppertz, S.C.*, with *Craig M. Kuhary*, of Waukesha.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Marguerite M. Moeller*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J. Samuel M. Munoz appeals from the judgment of conviction for two counts of second-degree sexual assault, following a jury trial. He argues that the trial court erred in denying his request for an *in camera* inspection of the victim's mental health treatment records. He also argues that the trial court improperly refused to allow him to cross-examine the victim regarding her "mother's attitude for babies born out of wedlock."

R.S. and Munoz were living together and had a consensual sexual relationship. R.S. testified that after living together for a few months their relationship changed and she wanted to move out. She testified that Munoz insisted that she stay and on several occasions forced her to have sex despite her refusal. The charges in this case relate to two such instances: on May 24, 1994, when Munoz tied up the victim with television cable; and on June 5, 1994, when Munoz held his hand

over her mouth and nose, preventing her from breathing. Munoz testified and denied any nonconsensual sexual conduct. Although several other witnesses testified for each side, the trial primarily required the jury to make a credibility call between R.S. and Munoz.

Munoz first argues that the trial court erred by denying his request for an *in camera* inspection of R.S.'s mental health records, under *State v. Shiffra*, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993). Defense counsel had reason to believe that R.S. had received psychiatric counseling for unrelated, prior sexual assaults. He advised the trial court:

> [R.S.] made representations to people that she was seeing a psychiatrist dealing with prior assaults and I attempted to find out who that psychiatrist was so I could subpoena him, he could bring the records, the Court could examine them in camera. . . . Since I don't know who the psychiatrist is I couldn't do that.
>
> . . . .
> . . . I believe [R.S.] has already indicated to my client that these psychological counseling sessions had to do with prior assaults, that it's probable or at least beyond the realm of possible that those records would be relevant in determining the credibility and ability of the victim to testify accurately.
>
> . . . .
> . . . [S]he made a statement that she was being counseled in areas relative to the situation we have here.[1] Whether or not those records are going to say she admitted to her counselor those allegations

---

[1] This statement is ambiguous. However, based on the trial record as well as the appellate briefs, we understand that Munoz has always maintained that R.S.'s counseling related to prior assaults in which he was not involved.

were false or whether she's going to be able to say she's able to accurately perceive these kinds of events I don't know, and I'll admit to the Court I don't know. Many of the reasons I'm not as sure as I would like to be in this case is that the victim has refused to give the defense even a basis to form an offer of proof beyond what I have so far performed.

Thus, unable to determine whether such treatment actually had taken place, Munoz asked the trial court to order the production of any such records for an *in camera* inspection.

The trial court denied the request, drawing a distinction between the "psychological records [that] relate to past abuse" sought by the defense in the instant case and records of a complaining witness's "psychological disorder" sought by the defense in *Shiffra*. The trial court concluded that Munoz had failed to make the sufficient preliminary showing required under *Shiffra* for an *in camera* inspection.

"To be entitled to an *in camera* inspection, the defendant must make a preliminary showing that the sought-after evidence is material to his or her defense. We review under the clearly erroneous standard the findings of fact made by the trial court in its materiality determination." *Shiffra*, 175 Wis. 2d at 605, 499 N.W.2d at 721 (citation omitted). Whether a defendant has made the required preliminary showing presents a question of law. *State v. Speese*, 191 Wis. 2d 205, 222, 528 N.W.2d 63, 70 (Ct. App. 1995), ( *petition for review granted*, March 21, 1995). In the instant case, no factual findings are in dispute; the trial court rendered its decision assuming that even "if there are records," Munoz had failed to make the required preliminary

showing.[2] Thus, we review the sufficiency of Munoz's showing without deference to the trial court's conclusion. *Id.*

In *Shiffra*, we concluded that a defendant may be entitled to have the trial court conduct an *in camera* inspection of a complaining witness's past mental health treatment records even though such records otherwise would be privileged under § 905.04, STATS.[3] *Shiffra*, 175 Wis. 2d at 606-607, 499 N.W.2d at 722. We concluded "that the defendant's burden should be to make a preliminary showing that the sought-after evidence is relevant and may be helpful to the defense or is necessary to a fair determination of guilt or innocence." *Id.* at 608, 499 N.W.2d at 723. On appeal, Munoz argues:

> Since the defendant was facing similar allegations [to those involved in R.S.'s prior assaults], one does not have to stretch too far to see how these records may be essential to Munoz's defense. . . . [T]hese

---

[2] The prosecutor also argued the issue, implicitly accepting the defense representation. She stated, "With respect to the medical records pertaining to psychiatric or psychological exam or treatment, I don't know if she went to see somebody or not so I'm going to assume that she did . . . ."

[3] In relevant part, § 905.04(2), STATS., provides:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's . . . mental or emotional condition, among the patient, the patient's physician, . . . the patient's psychologist, the patient's social worker, the patient's marriage and family therapist, the patient's professional counselor or persons, including members of the patient's family, who are participating in the diagnosis or treatment under the direction of the physician, . . . psychologist, social worker, marriage and family therapist or professional counselor.

records may demonstrate an inability of [R.S.] to accurately perceive events of this nature. In addition, the records may lay the basis for introduction of prior untruthful allegations of sexual assault by the victim, which would arguably be admissible under section 972.11(2)(b)(3), Wisconsin Statutes.[4]

The State responds "that Munoz was on a fishing expedition to discover anything in [R.S.'s] putative psychiatric records which would affect her credibility," and argues that there is no authority for the trial court to require such discovery or disclosure. The State relies on *State v. Lederer*, 99 Wis. 2d 430, 299 N.W.2d 457 (Ct. App. 1980), where we upheld the trial court's denial of the defendant's request for discovery of the victim's past addresses, concluding that "the mere possibility that the past addresses *might* produce some evidence helpful to the defense is not enough to justify this intrusion into the victim's past." *Id.* at 442, 299 N.W.2d at 464 (emphasis in original).

Here, as in *Lederer*, the defense offered nothing more than "the mere possibility" that the records "*might* produce some evidence helpful to the defense." *Lederer*, however, was decided before *Shiffra*. The broad language of *Shiffra*—"that the sought-after evidence is relevant and *may be helpful* to the defense," *Shiffra*, 175 Wis. 2d at 608, 499 N.W.2d at 723 (emphasis added)—certainly would seem to suggest a very low threshold for a defendant to establish the basis for an *in camera* inspection. A closer reading of *Shiffra*, however, reveals that a defendant must establish more than "the mere possibility" that psychiatric records

---

[4] Section 972.11(2)(b)3, STATS., specifies an exception to the "rape shield law" for "[e]vidence of prior untruthful allegations of sexual assault made by the complaining witness."

"may be helpful" in order to justify disclosure for an *in camera* inspection.

First, we note that although *Shiffra's* reference to information that "is relevant and *may be helpful to the defense*" could cover almost anything the defense sought to discover, *Shiffra* did not repeat the "may be helpful" language elsewhere in the opinion but, instead, reiterated the standard: "may be necessary to a fair determination of guilt or innocence." *Shiffra,* 175 Wis. 2d at 610, 499 N.W.2d at 723 (emphasis added).

Second, as the State argues on appeal:

> The defense theory in *Shiffra* was that the sexual contact underlying the charges was consensual and that the victim's psychiatric condition caused her to misperceive the contact as a sexual assault. Specifically, the defense presented proof that the victim, Pamela, suffered from post-traumatic stress disorder stemming from repeated sexual assaults by her stepfather and that as a result, she might suffer flashbacks to the assaults which would then cause her to view consensual sexual conduct as nonconsensual.
>
> Also in support of its theory that the victim was unable to perceive the difference between consensual and nonconsensual sexual contact, the defense cited a previous incident in which she had filed sexual assault charges that were later reduced to disorderly conduct. In that case, Pamela's sister had refused to testify on her behalf, in part because the sister felt Pamela could not " 'distinguish between what had occurred and what would be characterized as some dream effect.' "

For these reasons among others, we concluded that "the information might well serve as a *confirmation* of Pamela's reality problems in sexual matters." *Shiffra,* 175 Wis. 2d at 611, 499 N.W.2d at 724 (emphasis in

398

original). Here, by contrast, Munoz offered the trial court nothing to suggest that R.S. suffered from any psychological disorder rendering "reality problems in sexual matters." Munoz offered nothing except the assertion that R.S. had acknowledged receiving psychiatric counseling for prior assaults.

Although allegedly receiving psychiatric counseling for assaults may lead one to speculate about any number of "mere possibilities," standing alone it has no relevance. Indeed, to conclude otherwise would be to counter not only the confidentiality granted to patients under § 905.04(2), STATS., but also the very theme of Wisconsin's rape shield law that, with certain exceptions, precludes introduction of "any evidence concerning the complaining witness's prior sexual conduct." Section 972.11(2)(b), STATS. That the "prior sexual conduct" may have occurred during an assault, and that the assault may have led the victim to counseling certainly would not open the door to discovery or introduction of the records of such counseling.[5] In this sense, the trial court perceptively drew the distinction between the "psychological records [that] relate to past abuse" in this case, and the records of "psychological disorder" that could have had a bearing on credibility in *Shiffra*.

We appreciate that perhaps Munoz could not have known more details of the presumed psychiatric records. We also appreciate that, as emphasized in

---

[5] We recognize that, in this case, we are considering not the admissibility of evidence under the rape shield law, but rather, the sufficiency of a defendant's showing to gain an *in camera* inspection. Still, in assessing whether a defendant has satisfied the relevancy standard under *Shiffra*, rape shield considerations are instructive.

*Shiffra*, a trial court's *in camera* inspection is a limited intrusion that often provides "the best tool for resolving conflicts between the sometimes competing goals of confidential privilege and the right to put on a defense." *Id.* at 611-612, 499 N.W.2d at 724. Still, unlike the situation in *Shiffra*, Munoz offered nothing to suggest that R.S. had not actually suffered prior assaults, or that her experiences or counseling in any way compromised her credibility. To satisfy *Shiffra's* standard, Munoz would have had to have offered the trial court something more than "mere possibilities" based on assertions of the victim's acknowledgement that she had suffered previous assaults for which she received psychiatric counseling.

Munoz also argues that the trial court improperly denied his attempt to cross-examine the victim with the question, "What was your mother's attitude for babies born out of wedlock?" The trial court sustained the State's objection "based on relevancy." Ten transcript pages later, defense counsel asked the victim, "Weren't you going to live with your mother originally after you and Sam split up?" The victim replied, "Yes," and an unreported sidebar conference immediately followed. Then, much later, at the conclusion of the victim's testimony, defense counsel offered his account of the sidebar and explained his theory:

> During the course of the proceedings we had a sidebar in which I wanted to go into [R.S.'s] state of mind or perception as to her mother's reaction were she to be pregnant. I felt that was relevant as to the fact that [R.S.] had already testified that she was going to live with her mother after she and the defendant split up but subsequently decided to move in with her sister. I believe the reason was she had determined she was pregnant and her mother

would not allow her to live with her. I do not believe that her mother directly told her that but that prior experience had shown her that would be the result because her sister had had a child out of wedlock and had attempted to move in with the mother and had been told by the mother that was not acceptable and under those circumstances the sister was not welcome in the home. I feel that goes directly to [R.S.'s] credibility and her motive to lie in this case, or potentially fabricate evidence because of the fact if she loses her family support along with losing the defendant at the same time she would be on her own with a child.

On appeal, Munoz argues that the victim's "credibility was directly at issue and any evidence which would have suggested that she may have had reason or incentive not to be truthful in the reporting of the alleged assaults would have potentially affected her credibility." The State responds by pointing to the victim's uncontroverted testimony that she and Munoz had an ongoing, consensual sexual relationship for two months preceding the assaults, and that she did not realize that she was pregnant when she reported the assaults. Thus, the State maintains:

> Given that [R.S.] was already two months pregnant in June of 1994, the defendant's theory that she falsely accused him of sexually assaulting her on May 24 and June 5, 1994, to provide her mother with an innocent explanation for her pregnancy makes no sense whatsoever. Obviously, the pregnancy could not have resulted from the nonconsensual sexual episodes on May 24 and June 5. Rather, the pregnancy necessarily occurred during the time [R.S.] and the defendant were engaging in a consensual sexual relationship, which she testified continued until mid-May.

401

To this argument, Munoz offers no reply but contends that "a jury could have chosen to disregard [R.S.'s] version that she was approximately two months pregnant at the time she reported the assaults and a jury could have chosen to disregard her version that she was unaware of her pregnancy until the examination [following her report of the assaults]."

Generally, the admissibility of evidence presents an issue within the trial court's discretion. *See State v. Alsteen*, 108 Wis. 2d 723, 727, 324 N.W.2d 426, 428 (1982). We will not reverse the trial court's decision unless the trial court erroneously exercised discretion or based its decision on an erroneous view of the law. *See State v. Eison*, 194 Wis. 2d 160, 171, 533 N.W.2d 738, 742 (1995).

We first note the difficulty in reviewing Munoz's argument given the apparent lags between the objection, the unreported sidebar, and the reported summary of the sidebar. Again, we emphasize:

> We recognize that sidebar conferences and after-the-fact summations of those conferences are commonplace in some courtrooms. We caution, however, that appellate review is better served by counsel following the § 901.03(1)(a), STATS., procedure of stating objections and grounds on the record. If a matter is significant enough to invite appellate review, it is too important to subject to a remote summation procedure.

*State v. Mainiero*, 189 Wis. 2d 80, 95 n.3, 525 N.W.2d 304, 310 n.3 (Ct. App. 1994). We acknowledge that, at times, trial judges and trial attorneys are understandably reluctant to interrupt the flow of testimony. Under such circumstances, brief side-bar conferences certainly are appropriate. Whenever possible, however,

they should be on the record. When they are not, it is essential that the subsequent on-the-record comments repeat or summarize the arguments and *confirm exactly what was presented to the trial court at the time of its ruling.*

■

From what we can discern from the record, it appears that the trial court properly exercised discretion. Initially, the question "What was your mother's attitude about babies born out of wedlock?" had no apparent relevance to any issue in the case.[6] Later, counsel was allowed to ask the victim whether she planned to live with her mother after leaving Munoz and, at the unreported sidebar conference, counsel apparently connected both questions to the defense theory challenging the victim's credibility. For the jury to make any such connection, however, it would have had to reject the victim's unchallenged testimony that she was two months pregnant but was unaware of her pregnancy until her examination following the assaults. Munoz offers no basis on which the jury could have done so and, without that, as the State points out, the defense theory "makes no sense."[7]

---

[6] Unfortunately, the opening statements were presented by both counsel off the record. Thus, if the defense offered anything in the opening statement to provide a theory or context for this question, it is not part of the record.

[7] Munoz also argues that the trial court's exclusion of this same testimony denied him his constitutional right to present a defense. Nothing in the record, however, suggests that Munoz offered this constitutional argument to the trial court. Thus, he waived this issue. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443-444, 287 N.W.2d 140, 145-146 (1980) (appellate courts do not ordinarily consider matters that are raised for the first time on appeal).