553 So.2d 1185 (1988)
STATE of Florida, Petitioner,
v.
Richard DIAMOND, Respondent.
Nos. 87-1992, 87-1993.
District Court of Appeal of Florida, First District.
August 22, 1988.
On Rehearing December 28, 1989.
Robert A. Butterworth, Atty. Gen., and Bradford L. Thomas, Asst. Atty. Gen., Tallahassee, for petitioner.
William B. Richbourg, Pensacola, for respondent.
On Rehearing En Banc December 28, 1989.
ZEHMER, Judge.
The state petitions for a writ of certiorari to review a pretrial order entered by the circuit court of Santa Rosa County in the criminal prosecution of respondent Richard Diamond on two charges of sexual battery upon persons under the age of 12 years. The order, entitled "Judgment," provides that "the State be, and is, estopped and enjoined from the prosecution of the Defendant upon each of these causes unless and until the State['s] complaining child witness, in any such cause to be prosecuted, shall first submit to a physical examination by the Defendant's medical expert." The state contends the trial court violated a clearly established principle of law when it ordered the alleged victims to submit to a compelled physical examination, citing State v. Smith, 260 So.2d 489 (Fla. 1972). Respondent contends there is nothing illegal about the trial court's order and that it does not depart from the essential requirements of law.
The facts revealed by the record before us are as follows. On May 22, 1987, respondent Diamond was charged by separate informations with two charges of sexual battery upon young girls under 12 years of age in violation of section 794.011(2), Florida Statutes (1985). The information in case number 87-1992 charged that sexual battery was committed against A.H., age eight years, "between January 1, 1986 and December 13, 1986[1] ... by vaginal penetration by the Defendant's penis and/or finger." The information in case *1186 number 88-1993 makes a similar charge in respect to C.F., age eight years.
After making a demand for discovery and offering to reciprocate, Diamond filed his "Motions To Compel Physical Examination" in each case, reciting that each of the alleged victims had been physically examined by Dr. Lelia Montes, a pediatrician and the medical examiner for the Child Protection Team, and that the findings by Dr. Montes as a result of these examinations were medically inconsistent with statements given by the two girls. More specifically, it is alleged that Dr. Montes's examination of C.F. revealed that, in her opinion, the vaginal opening of one child measured one-half (1/2) centimeter with evidence of "a slight hymenal tear that had healed at some time in the past" which, Dr. Montes stated on deposition, indicated that full sexual intercourse with an adult male was possible. Dr. Montes's examination of A.H. revealed a vaginal opening of three-quarters (3/4) centimeter and "an old hymenal tear that had apparently healed some time in the past" which, Dr. Montes opined on deposition, constituted "evidence of dialation [sic] in an eight year old child" who "had experienced penetration by an adult male." The defendant's motion further alleges that these findings of Dr. Montes and the history as related by each of the two girls have been discussed with two separate gynecologists, "each of whom indicated that the doctor's findings and the child's history, are not medically consistent." Diamond's motion requests that his expert, Dr. C.A. Horan, a qualified gynecologist, be allowed to examine the alleged victims "as an independent medical examiner."
After these motions were filed, the state, in both cases, gave notice of its intent to offer hearsay evidence in the form of the statements made by the two girls to Dr. Montes during her interview and physical examination and to Officer Jean Slappe of the Santa Rosa County Sheriff's Department, and also gave notice of its intent to use similar fact evidence in respect to defendant's commission of sexual battery and lewd and lascivious assaults upon these two girls and another girl. The state and the parents of both children objected to the requested examinations, so a joint evidentiary hearing was held on defendant's motions. The custodial parents of the alleged victims testified that while they had consented to the examination by Dr. Montes, they refused to consent to the examination requested by defendant, as they were already made uneasy by Dr. Montes's examination. Dr. Horan testified that the results of Dr. Montes's examinations of the alleged victims were inconsistent with their statements that they had repeatedly engaged in "full intercourse with an adult male" and that an examination of the victims would be very helpful if he were called to testify in this matter. Specifically, he indicated that Dr. Montes's conclusions were not well supported by the alleged victims' vaginal condition, and were not consistent with repeated intercourse because a child's vaginal opening should be at least 1.5 centimeters to show that full intercourse occurred. Moreover, Diamond contends, the correctness of Dr. Montes's description and diagnosis of an "old hymenal tear" may be highly important to deciding whether or not repeated intercourse by an adult male occurred, as contended by the state.[2] Dr. Horan and defendant's counsel offered to have the examination performed in Dr. Montes's office with Dr. Montes and the child's parents present.
The trial court's six-page order recites that it is "the final order and judgment of the Court that the Defendant's motion be, and is, hereby granted... ." The court explicitly finds that
Dr. Horan expressed the opinion that he needed an opportunity to conduct a personal physical examination of each of the subject complaining child witnesses in order to apppropriately present his testimony and expert opinion upon the *1187 issue of whether or not either of said complaining witnesses manifested physical findings, upon examination, consistent with vaginal, sexual intercourse with the adult male Defendant.
The Court finds that the Defendant has offered sufficient evidence to establish a clear and convincing prima facie showing of good cause for the need for such physical examination by the Defendant's expert physician witness to aid in the presentation of evidence in his defense.
The Court further finds that the State has not offered sufficient evidence to rebut the Defendant's showing of good cause for the examination nor any evidence that the results of such physical examination could not, or would not, be likely to disclose material and relevant evidence bearing directly upon the Defendant's guilt or innocence and upon the credibility of the State's complaining child witnesses.
The trial court's order then discusses the state's reliance on the supreme court's decision in State v. Smith, 260 So.2d 489, and recognizes that witnesses in criminal prosecutions have a common law and constitutional right of privacy under Section 23 of the Florida Declaration of Rights that protects them from court ordered physical examinations "unless the State can demonstrate a compelling State interest that justifies such intrusion upon an individual's right to privacy." But the court also notes that it is required to consider a criminal defendant's right to due process under the fourteenth amendment to the federal constitution and the Florida constitution, which must be weighed against the protection afforded by the witnesses' right of privacy, and notes that in Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544 (Fla. 1985), the supreme court ruled that the right of privacy may give way only upon proof of a compelling state interest. The court's order then continues:
This Court notes that each of the complaining child witnesses have previously been voluntarily examined by the State's medical expert at the request of, and upon direction of local law enforcement and that the reasonable scientific inferences, opinions and results that may be derived from such physical examination, can reasonably be expected to have a direct material and substantial impact upon the determination of the Defendant's guilt or innocence in each of the pending cases.
To allow the State to prosecute these criminal proceedings against the Defendant, utilizing the testimony of each of the complaining child witnesses, supported by the testimony of the State's selected examining physician, Dr. Lelia Montes, while denying to the Defendant the opportunity to present an effective defense through an examining physician of his choice  who if permitted to conduct such physical examination can reasonably be expected to testify in the Defendant's behalf upon a material and substantial issue and essential element of the charged offense  will in effect deny the Defendant his Constitutional rights to due process and his Constitutional right to fairly enjoy and defend his liberty.
This Court is therefore confronted with a dilemma of how to protect the Defendant's constitutional rights and its obligation to protect the right of privacy of each of the State's complaining child witnesses to the extent that the same may be guaranteed by Section 23 of the Declaration of Rights of our Constitution and as recognized by our Florida Supreme Court in the case of State v. Smith... .

... .
It is, of course, the right of each of the complaining child witnesses, acting through their lawful parental custodians, to elect to waive their rights of privacy and to voluntarily submit to the physical examination by a qualified physician as they have previously done in connection with the State's expert witness, Dr. Montes.
The court concluded that under the circumstances of this case  where the complaining witnesses, with the concurrence of the state, have opposed the requested physical *1188 examination  "the State should be estopped and enjoined from proceeding upon the trial of the Defendant on the pending sexual battery charges, unless and until such time as the complaining child witness, upon the charge to be prosecuted, has submitted herself to a physical examination by the examining physician selected by the Defendant in preparation of his defense." The court ordered that the state is estopped and enjoined from proceeding with the prosecution until the witnesses have submitted to the examination, and further provided that each case will be restored to the calendar upon demonstration that the physical examinations have taken place, otherwise the case will be "stayed indefinitely pending further order of the Court."
The first issue we must address is whether this order may be properly reviewed by certiorari, as requested by the state. Subsequent to the entry of the order the state moved the court to treat its ruling as an order of dismissal so the state could take an immediate appeal. The court denied that motion, but did state that it believed its ruling involved a question of great public importance, thereby indicating that it should be reviewed by this court. Thus, despite the ambiguous language of the order under review that it is "the final order and judgment of the Court," the order cannot be treated as a final judgment for purposes of appeal, for the action continues in the trial court. Yet, it is readily apparent that the state cannot proceed with the prosecution of these cases so long as the trial court's order remains outstanding, unless the parents of the child witnesses relent in their opposition and consent to the examinations, a matter over which the state has no power or control. We agree with the state, therefore, that we have the authority to review this pretrial order upon a petition for writ of certiorari provided the state can show that the ruling constitutes a departure from the essential requirements of the law, keeping in mind that this "extraordinary writ is reserved for those situations where there has been a violation of a clearly established principle of law resulting in a miscarriage of justice." State v. Pettis, 520 So.2d 250, 254 (Fla. 1988).
The parties have represented that there is no specific statute or rule which explicitly authorizes a trial court to require a complaining witness in a sexual battery case to submit to a physical examination of the type sought here. Our research has likewise failed to reveal any authority precisely on point. The state argues, however, that State v. Smith, supra, is controlling on this question. In Smith, the trial court had entered a pretrial order that a "witness, who may be used by the State for identification of the persons involved in the perpetration of the crime alleged to have been committed by defendants, shall be examined for visual acuity." 260 So.2d at 490. On review, the supreme court found that the common law did not authorize a court to require the physical exam of a witness "because discovery in criminal cases was unknown to the common law," and nothing in the Florida Rules of Criminal Procedure relating to discovery "purports to authorize a trial court to grant a motion compelling witnesses to submit to a physical examination of any sort." The court, in holding that the trial court departed from the essential elements of law, stated:
The only ground for the motion asserted by the defendants in the case sub judice was that the State's case depended in whole or in part upon the identification of defendants by eye witnesses. Even assuming, that in some rare instance, justice may require some type of physical examination of a witness, more must be shown than in the case sub judice.
260 So.2d at 491 (emphasis added). From this rationale the state argues that the trial court had no authority to require physical examinations of the two child victims as a condition of the state's proceeding with the prosecutions. The state contends that "the trial court's order violated two principles of law: one, the principle established in State v. Smith, supra, that a witness to a crime may not be compelled to undergo physical examination; and two, the right of privacy established by the Florida Constitution, cited *1189 by the trial court. See Article I, Section 23, Fla. Const. (1980)."
Diamond responds that the trial court was presented with a situation involving conflicting constitutional rights and was required to consider and weigh each right against the other to determine which should give way and which should be enforced in this instance. Respondent points out that the trial court recognized the complaining witnesses' right of privacy and did not order them to submit to a physical examination, but left it to them to decide whether to voluntarily consent so that the state could proceed to use their testimony. He further argues that in State v. Smith the supreme court recognized that in certain instances justice may require some type of physical examination, and because denial of such examination in this case would effectively deny defendant the right to due process and a fair trial, the trial court had authority to condition the prosecution of these charges upon the consent of the complaining witnesses to undergo the requested examination. Respondent concedes that the specific relief granted by the trial judge may not be the only manner of enforcing respondent's constitutional rights, and suggests that we fashion such additional relief should we disagree with the trial court's ruling.
Before considering these arguments, we must determine precisely what the trial court has ordered. We are not aware of any authority granting the trial court power to curtail the state's prosecution of criminal charges for sexual battery upon failure of the complaining witness to submit to a physical examination, and we do not believe the trial court had such power or intended that result. Rather, the trial judge's comments in the hearing transcript suggest that the court is treating defendant's motion for examination as akin to a motion to suppress the use of certain evidence, and only intends to preclude the state from using any evidence that must be presented through the testimony of Dr. Montes or any evidence regarding the physical examination by Dr. Montes unless the children consent to be physically examined by defendant's gynecologist. This intent is made even more evident by the trial court's refusal to dismiss these prosecutions upon the state's motion. Our decision, therefore, is based upon our construction of the subject order as precluding the state's use of certain evidence and not that the prosecution cannot go forward upon other evidence the state might be able to present. To the extent that the order may have intended to foreclose the state's presentation of such other evidence, it would be beyond the court's power at this point and would have to be vacated. Our construction of the order avoids a remand on this particular point and is consistent with that argued by respondent.
While we have found no other case dealing with physical examination of a complaining witness in criminal cases, there are some judicial decisions dealing with mental examination of a complaining witness. Both the Second and the Fourth Districts have recognized that a trial court has the inherent power to order a psychiatric examination of a complaining witness if "strong and compelling" reasons for the examination are shown to exist.
In Dinkins v. State, 244 So.2d 148 (Fla. 4th DCA 1971), the court upheld the trial court's denial of a defendant's motion to compel the victim of a sexual battery to submit to a psychiatric examination, stating there was "absolutely no showing that psychiatric examination of the prosecutrix was essential to prevent a manifest miscarriage of justice." Id. at 150. The court recognized that several scholars had advocated the power to order such examinations, but stated:
Nonetheless, it strikes us as sound, in the absence of either express statutory authority or court rule permitting such, or in the absence of such strong and compelling evidence of mental or emotional instability of the prosecutrix that denial of a psychiatric examination could amount to a denial of due process of law, that the court should not subject the prosecutrix to such an examination. Thus, while we do not expressly reject the concept of the court possessing inherent power to require such an *1190 examination under the most compelling circumstances where it is necessary to insure a just and orderly disposition of the cause, we would discourage the practice in any but the most extreme instances.

244 So.2d at 150 (emphasis added).
Similarly in State v. Coe, 521 So.2d 373, 375 (Fla. 2d DCA 1988), the court was faced with deciding "whether the trial court has the inherent power to require victims of sexual battery to undergo psychiatric or psychological examinations in order to determine their credibility, and if so, whether the facts of the present case support ordering such an examination." Concluding that the facts in Coe did not support the ordering of such an examination, the court nevertheless recognized that a trial court did possess such inherent power, stating:
Even in jurisdictions holding that the trial court does have the authority to require such examinations, the courts emphasize that such authority should only be exercised for "strong" and "compelling" reasons. [Citations omitted]. The fourth district's opinion in Dinkins, while not expressly holding that the trial courts possess this authority, is aligned with the latter view that even if such [inherent] authority exists, it should not be exercised unless "strong" and "compelling" reasons exist. We agree with the view espoused in Dinkins.

521 So.2d 376.
We recognize, as stated by the supreme court in State v. Smith, that there was no common law right to compulsory discovery in criminal cases. But a court always has the inherent power to insure that a party before it is accorded constitutional rights of due process and a fair trial, whether or not a statute or rule of court explicitly covers the needs shown by the particular circumstances. Our rules of criminal procedure are designed and intended to provide the criminally accused a fair trial in accordance with constitutional concepts of due process. The rules now provide for limited pretrial discovery and for compulsory process to obtain both testimonial and physical evidence at trial. But the rules of procedure do not cover every conceivable situation that may arise in the course of a prosecution. A court's power to assure compliance with due process requirements cannot be limited to the explicit authority or procedure found either in court rules or in statutes, for the court's power to enforce constitutional rights stems from the constitution itself and the judicial power given the courts to interpret and enforce the federal and state constitutions. Rose v. Palm Beach County, 361 So.2d 135 (Fla. 1978). The state does not point to any explicit rule that authorizes or restricts physical or mental examinations of complaining witnesses in sexual battery cases for the purpose of implementing the constitutional right to privacy. Rather, the court must necessarily consider and weigh that constitutional right against competing, inconsistent rights and interests of the accused in determining which right shall be enforced under the circumstances. We hold that the trial court in this case had the power to consider defendant's motion for a physical examination of the complaining witnesses and, if necessary to insure a just and orderly disposition of the cause, to grant the motion upon a showing of strong and compelling reasons that denial of such relief would amount to a denial of due process of law. We believe that the supreme court's explicit reservation in Smith, emphasized in the text quoted above, is necessarily based upon these constitutional considerations.
Next, the state argues that even if the trial court had the power to grant the defendant's requested relief, he has failed to show sufficiently strong and compelling reasons for the court's doing so in this case. It argues that "this is not a situation when a defendant is facing an expert's unrebuttable testimony that the children conclusively experienced sexual intercourse" because "Dr. Montes' examination did not show either alleged victim's genitalia" met the 1.5 centimeter criteria espoused by Dr. Horan, and "Dr. Horan could use the State's own evidence to exonerate the defendant of forcing the children to have repeated intercourse." (Petitioner's *1191 Brief, pp. 8-9.) The state concludes that "if the trial court's order is upheld, no sexual battery victim will be safe from the ultimate invasion of privacy." (Id. at p. 11.)
Respondent contends that without the physical examination Dr. Horan will be unable to learn all the pertinent facts concerning the condition of the children's genitalia sufficient to opine without reservation that the sexual intercourse charged could not have taken place as described by the children. In particular, respondent says, whether or not Dr. Montes's "diagnosis of an `old hymenal tear' is correct or not could be extremely important" and "there is no way to know unless an expert (in this case Dr. Horan who is a gynecologist) makes his own examination of the same child to see if he agrees or disagrees with the State's witness." (Respondent's Response, p. 7.) Respondent asserts that it would deprive him of the ability to defend himself if the state can obtain physical evidence of the condition of the complaining witnesses but the defendant cannot, even though it is shown that such physical evidence can prove the offense could not have occurred as the complaining witnesses have stated. Further, respondent points out that the trial judge did not compel the witnesses to forego their right to privacy and submit to a compulsory examination but left the matter to their voluntary decision, thereby effectuating as much as possible the constitutional rights of both parties. Therefore, respondent concludes, the order does not violate any clear principle of law and does not constitute a departure from the substantial requirements of the law.
As previously noted, the trial court carefully weighed the competing constitutional rights of the interested individuals and concluded, in the exercise of judicial discretion, that the interests of justice would be served best by requiring voluntary consent of the child witnesses to the requested physical examination before the state would be permitted to use the evidence developed by Dr. Montes's physical examination against defendant. We are, therefore, essentially reviewing an exercise of judicial discretion by the trial court. Upon petition by the state in criminal cases, appellate courts should grant the extraordinary writ of common law certiorari only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice. State v. Pettis, 520 So.2d 250 (Fla. 1988); Combs v. State, 436 So.2d 93 (Fla. 1983). We hold that there has been no showing by the petitioner of any violation of a clearly established principle of law resulting in a miscarriage of justice, because the trial court has fashioned an order which attempts to balance the rights of the complaining witnesses with the rights of the accused in a reasonable manner. The state's position that our refusal to overturn the order in this case will subject every victim of such offenses to a compulsory physical examination in every case of sexual battery is grossly overstated. These circumstances do not necessarily occur in every such prosecution; rather, it would seem to be somewhat unique to defend such a charge on the premise that evidence from a medical examination shows a physical impossibility for the offense to have occurred as contended by the victims.
Our decision should not be read as a callous disregard of the rights of these child victims. We are most mindful that a gynecological examination of the type here involved can be intimidating and unpleasant for these child witnesses, and we sympathize with their plight. But the defendant is charged with a serious criminal offense, one of the most serious the state can bring, and his constitutional right to due process and a fair trial must be protected as well as the rights of the children. We particularly note, as did the trial court, that each of these child witnesses previously submitted to examination by the state's medical expert voluntarily to assist it in making out a case against the accused. This fact was of pivotal significance to the trial court's ruling and is likewise to our decision. Further, in attempting to lessen the unpleasantness of the examination, the court and Dr. Horan agreed that the victims' parents and Dr. Montes could be present in Dr. Montes's office or any other *1192 place the latter should designate for the examination.[3] It is crucial in this sexual battery case to determine "whether or not either of said complaining witnesses manifested physical findings, upon examination, consistent with vaginal, sexual intercourse with the adult male Defendant" (R. 32) as described by them. Based on the record before us, we are unable to say that the trial court abused its discretion in ordering the victims to undergo a voluntary physical examination upon the conditions specified in respect to the state's prosecution of the charges.
We agree with the trial court that this issue is one of great public importance, and certify to the supreme court the following question:
WHETHER THE TRIAL COURT'S ORDER REQUIRING THE COMPLAINING CHILD WITNESSES TO VOLUNTARILY CONSENT TO A PHYSICAL EXAMINATION BY THE ACCUSED'S EXPERT GYNECOLOGIST UNDER THE CONDITIONS STATED THEREIN CONSTITUTES A VIOLATION OF A CLEARLY ESTABLISHED PRINCIPLE OF LAW RESULTING IN A MISCARRIAGE OF JUSTICE?
Because we have answered the certified question in the negative, the petition for certiorari is DENIED.
SMITH, C.J., and JOANOS, J., concur.

ON REHEARING EN BANC
PER CURIAM.
The court has chosen to consider this case en banc pursuant to Fla.R.App.P. 9.331, upon a majority vote that en banc consideration is necessary because the case is of exceptional importance.
We grant certiorari and quash the trial court's order because the order constitutes a violation of a clearly established principle of law resulting in a miscarriage of justice.
We certify to the Florida Supreme Court the following as a question of great public importance:
WHETHER THE TRIAL COURT'S ORDER RELATING TO THE PHYSICAL EXAMINATION OF THE COMPLAINING CHILD WITNESSES BY THE ACCUSED'S EXPERT GYNECOLOGIST UNDER THE CONDITIONS THEREIN STATED CONSTITUTES A VIOLATION OF A CLEARLY ESTABLISHED PRINCIPLE OF LAW RESULTING IN A MISCARRIAGE OF JUSTICE?
BOOTH, THOMPSON and MINER, JJ., concur.
ERVIN, J., concurs with an opinion.
WENTWORTH, J., concurs with an opinion in which ERVIN, BOOTH, THOMPSON, NIMMONS and MINER, JJ., concur.
NIMMONS, J., concurs with an opinion in which ERVIN, BOOTH, WENTWORTH, THOMPSON and MINER, JJ., concur.
BARFIELD, J., concurs with an opinion.
ZEHMER, J., dissents with an opinion in which SHIVERS, C.J., and SMITH, JOANOS and WIGGINTON, JJ., concur.
NIMMONS, Judge, concurring,
The panel opinion would create out of whole cloth a brand new right in criminal defendants to have rape victims physically examined by defense doctors. In so doing, the panel would run roughshod over clearly established Florida Supreme Court precedent, the Florida Rules of Criminal Procedure, and the rights of victims.
In the first place, the sanction employed by the trial court for the victims' refusal to submit to pelvic examinations by a defense-selected doctor is the absolute barring of further prosecution by the state. Even the *1193 panel concedes that the trial court has no such power to bar further prosecution under such circumstances. The panel purports to avoid the obvious necessity for granting certiorari and quashing the order by construing the order as one requiring suppression of the testimony of Dr. Montes (the H.R.S. Child Protection Team physician who initially examined the two little girls) in the event that the two children refuse to submit to the additional examinations sought by the defendant. Such construction is a patent distortion of the subject order as the following review of the record clearly shows.
The order explicitly provides that "the state be, and is, estopped and enjoined from the prosecution of the defendant ... unless and until the state complaining child witness ... shall first submit herself for a physical examination by the defendant's medical expert... ." According to the panel opinion, the justification for the panel's variant construction of the subject order was because of "the trial judge's comments in the hearing transcript." But while Judge Lowrey did indeed indicate to counsel at the hearing on the motion that he was considering the evidentiary exclusion, the judge took the motion under advisement at the hearing's conclusion. Between that hearing and the entry of the subject order a month later, the judge obviously decided to reject that avenue in favor of the sanction (a total bar of the prosecution) which he so clearly provided in the order. This intent is confirmed by the judge's following comments made to the attorneys at a post-order hearing:
And, I felt if by doing more than just granting the defendant's motion for examination by putting in the language that the state was estopped and enjoined from prosecuting the action until the examination was had, that it put the thing in a posture that the District Court of Appeal would clearly have before it a situation in which it would feel it was appropriate to take common law cert... .
* * * * * *
And I have tried to put it in a posture that they can do it and it is just hard for me to believe that the appellate court will not take common law cert. on this case under the circumstances with an injunction against the state prosecuting until this examination takes place.
Although the panel opinion observed that "we are not aware of any authority granting the trial court power to curtail the state's prosecution of criminal charges for sexual battery upon failure of the complaining witness to submit to a physical examination," and although that is precisely what the order provided for and what the judge intended, the panel opinion, nevertheless, would deny certiorari. Having said all of this, it really does not matter to me whether the panel's interpretation of the order's intent is erroneous  as it obviously is  for in either case, the order is a dramatic departure from established law.
The trial court and the panel also seem to take refuge in the fact that the subject order does not actually compel the two girls to submit themselves against their wishes to the required pelvic examinations. Instead, their refusal to submit will "only": (1) operate as a bar to further prosecution or, (2) assuming we were to buy into the panel opinion's misconstruction of the order, operate to suppress the state's use of the testimony of Dr. Montes  testimony which everyone, including the panel, appears to concede may be entirely competent and admissible. This is a purely sophistic distinction because, regardless of whether the order acts directly upon the victims or operates to suppress otherwise perfectly legitimate evidence,[1] the order must be supported, if at all, by the existence of a right in the defendant to have the victims physically examined. As will readily be seen, there is no such right.
One should have to go no further than State v. Smith, 260 So.2d 489 (Fla. 1972) in resolving the issue at hand. Indeed, Smith *1194 is virtually on all fours, both substantively and procedurally, with the case at bar.
Smith involved a first degree murder prosecution in which the trial court, upon motion of the defendant, entered a pretrial order requiring certain eyewitnesses to submit to physical examinations for visual acuity by a specified doctor. The state took an interlocutory appeal to this court. This court, although holding that it had no jurisdiction to entertain an appeal by the state, treated the attempted appeal as a petition for a writ of common law certiorari. However, on the merits, this court declined to disturb the trial court's order and, as the panel sought to do in the instant case, denied certiorari. State v. Smith, 254 So.2d 402 (Fla. 1st DCA 1971).[2]
Subsequently, the Supreme Court, while agreeing with our Smith opinion to the extent of our acceptance of the interlocutory appeal as a petition for writ of certiorari, disagreed with our decision to deny certiorari on the merits. In his opinion, Justice Adkins (speaking for a unanimous court  five members participating) stated:
No right is held more sacred, or is more carefully guarded, by the common law, than the right of an individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. Union Pacific Railroad Company v. Botsford, 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734 (1891). The common law does not authorize a court to require the physical examination of a witness, because discovery in criminal cases was unknown to the common law. See State v. Lampp, 155 So.2d 10 (Fla.App.2d, 1963). Pursuant to the authority of Fla. Const. art. V, § 3, this Court has adopted rules of procedure governing criminal trials in this State. These rules include certain provisions relating to discovery in criminal cases. See Florida Rules of Criminal Procedure, Rule 3.220, 33 F.S.A. Nothing contained in these rules purports to authorize a trial court to grant a motion compelling witnesses to submit to a physical examination of any sort.
* * * * * *
Even assuming, that in some rare instance, justice may require some type of physical examination of a witness, more must be shown than in the case sub judice.

The trial judge in entering the order in question departed from the essential requirements of law.
That portion of the decision of the District Court of Appeal denying the petition for writ of certiorari is quashed. This cause is remanded with instructions to grant the writ of certiorari and quash the order of the trial judge.
260 So.2d at 491. The Supreme Court's strong language in Smith must be looked upon as a firm warning to those who would feel moved to lead the jurisprudence of our state into uncharted waters by creating, via spontaneous generation, a criminal defense right to have crime victims or witnesses subjected to physical examinations.
Although the panel does not acknowledge that its opinion conflicts with the Supreme Court's decision in Smith, Judge Lowrey candidly recognized at the hearing that his order was indeed in contravention of Smith, with which decision he expressed *1195 disagreement. Further, the judge wrote in his order:
This Court has not been directed by the Defendant to any specific authority under the Florida Rules of Criminal Procedure, nor any authority under the Laws of Florida enacted by the Legislature, nor any Appellate decision of our Florida Supreme Court or District Court of Appeal which authorizes this Court, over the objection of the State and its witness, to order a physical examination on behalf of the Defendant.
As far as I have been able to determine, the Supreme Court has never even hinted at receding from its holding in Smith.[3] Likewise, the expansive discovery provisions of the Florida Rules of Criminal Procedure  unlike the Rules of Civil Procedure[4]  are still conspicuously devoid of any provision for pretrial physical examinations.
To me, the most remarkable thing about the trial court's order and the panel's opinion is that the only significant pertinent changes which have occurred in Florida jurisprudence since the Supreme Court's decision in Smith are changes which make even stronger the logic and rationale articulated in Smith, to wit: (1) adoption by the people of Florida of a state constitutional amendment specifically providing for a right of privacy (Article I, section 23); (2) heightened sensitivity to the effects of the criminal justice process upon child sexual abuse victims[5]; and (3) adoption only last year of a new state constitutional provision securing victims' rights.
Curiously, the centerpiece of the panel's opinion, in terms of case authority, appears to be two DCA cases: Dinkins v. State, *1196 244 So.2d 148 (Fla. 4th DCA 1971); and State v. Coe, 521 So.2d 373 (Fla. 2nd DCA 1988). Both involved efforts by the defendants to require that the alleged rape victims submit to psychiatric examinations. In Dinkins, the motion was denied, and in Coe, the motion was granted.
In Dinkins, which was written prior to the Supreme Court's opinion in Smith, the Fourth District affirmed the trial court's denial, stating:
[W]hile we do not expressly reject the concept of the court possessing inherent power to require such an examination under the most compelling circumstances where it is necessary to insure a just and orderly disposition of the cause, we would discourage the practice in any but the most extreme instances.
244 So.2d at 150. In Coe, the Second District quashed the trial judge's order, holding that the trial court had "departed from the essential requirements of the law." 521 So.2d at 376. The opinion stated:
Even in jurisdictions holding that the trial court does have the authority to require such examinations, the courts emphasize that such authority should only be exercised for "strong" and "compelling" reasons. See, e.g., State v. Gregg, 226 Kan. 481, 602 P.2d 85 (1979); Forbes v. State, 559 S.W.2d 318 (Tenn. 1977); State v. Lederer, 99 Wis.2d 430, 299 N.W.2d 457 (1980). The fourth district's opinion in Dinkins, while not expressly holding that trial courts possess this authority, is aligned with the latter view that even if such authority exists, it should not be exercised unless "strong" and "compelling" reasons exist. We agree with the view espoused in Dinkins.

521 So.2d at 376.
The panel opinion, after quoting the above excerpt from Coe, makes the erroneous statement that Coe "recognized that a trial court did possess such inherent power." I, of course, disagree, for it is abundantly clear that that is not what the Second District said.
If, however, we were to construe the Supreme Court's following language in Smith,
Even assuming, that in some rare instance, justice may require some type of physical examination of a witness, more must be shown than in the case sub judice. 260 So.2d at 491,
in such a way as to support the proposition that trial courts in Florida have the "inherent power" to require physical examinations of witnesses in criminal cases, the case sub judice can hardly be characterized as that "rare instance" justifying the extraordinary right demanded by this defendant and sanctioned by the panel opinion. Moreover, I would venture to say that the courts in Smith (visual acuity examination), Dinkins (psychiatric examination), and Coe (psychiatric examination) would be surprised to learn that their opinions were cited as authority for finding that the "rare instance" or "most compelling circumstances" were satisfied in a case such as this.
In the first place, we are not dealing with an eye test or mental status examination, but rather with an examination which must, by any measure, be regarded as one of the most personally intrusive  and, for many, profoundly embarrassing  experiences a woman (let alone, a child) can endure.
Secondly, a close examination of the record in this case clearly shows the lack of a factual predicate which could possibly characterize this as the type of "rare instance" justifying the unusual procedure approved by the panel opinion. A summary of the salient facts will serve to demonstrate this point.
Both the order on appeal and the panel rely upon the opinion of defense counsel's physician (Dr. Horan) that the findings of Dr. Montes (medical examiner for the Child Protection Team) were inconsistent with statements given by the two girls. Based upon her examination of the two girls, Dr. Montes found that: (1) as to C.F., the size of the vaginal opening measured 1/2 centimeter with evidence of a slight hymenal tear that had healed at some time in the past; and (2) as to A.H., the size of the vaginal *1197 opening measured 3/4 centimeter with evidence of an old hymenal tear. At the hearing on the defendant's motion to compel physical examinations of the two girls, the defense presented the testimony of Dr. Horan who opined that the dimensions of the vaginal openings as measured by Dr. Montes were within the normal range for children of their age and that the findings of Dr. Montes were inconsistent with the victims' description of recurring "full sexual intercourse"[6] with an adult male.
Q. And based upon [Dr. Montes'] findings or based upon her physical examination and based upon the history that you understand was given either to her or to other individuals by these children your testimony could [sic] be at trial that their oral history would be inconsistent with the physical examination, right? Physical findings?
A. That's absolutely correct.
Armed with this kind of testimony from its expert, what more can the defense expect to achieve by another pelvic examination of these girls? The facts in this case can hardly be said to present a compelling reason for departure from the Smith decision. Indeed, if the panel opinion were to be embraced by this court, it would take little, if any, resourcefulness on the part of defense attorneys to fashion arguments for compelled pelvic examinations of rape victims in a wide variety of rape case scenarios, which arguments would be equally persuasive to those presented by Diamond's counsel. And if the victim  or, as in this case, the parents  understandably and predictably were to refuse for the victim to be subjected to such ultimate indignity, then the defendant, relying upon the panel's opinion, would be entitled to an order of suppression of the concededly competent and untainted evidence of the initial examination.
Moreover, the panel opinion would, in all likelihood, have a further chilling effect upon the willingness of rape victims  children and adults alike  to come forward and participate in the criminal justice process, already a problem of no small significance in the criminal justice system.
There is no common law right of discovery in criminal cases in Florida. Smith, 260 So.2d at 491. Nor is there a constitutional right of discovery. Weatherford v. Bursey, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). And so, apart from that which is provided for by the Florida Rules of Criminal Procedure, there is simply no right of discovery in criminal cases. But, says the panel, it would not be fair to the defendant to deny his request for a physical examination of the victims; therefore, due process entitles him to have the victims physically examined.[7] The panel justifies its conclusion by noting that the victims had previously voluntarily submitted to an examination by Dr. Montes[8] whose observations of the victims' genitalia may well be different from those of Dr. Horan if the latter is permitted a similar examination. The panel, in its zeal to correct what it apparently perceives to be an imbalance in the procedural resources available to the two sides, has taken the quantum leap of inappropriately elevating such perceived unfairness to constitutional (due process) proportion. I suspect that, if this situation had occurred in the days prior to criminal discovery, the panel would have given short shrift to a defense demand seeking a *1198 physical examination of the victim on the thin due process grounds asserted by the defendant in this case. The fact that we now have certain Supreme Court-approved methods of discovery, of course, adds nothing to the defendant's constitutional argument.
If the defendant in this case, with its singularly uncompelling facts, is allowed to circumvent the discovery rules and prior judicial precedent on the basis of the nebulous constitutional ground relied upon by the panel opinion, it takes little imagination or experience with the criminal justice system to conjure up other equally undeserving scenarios which may commend themselves, with the aid of the kind of rationale embraced by the panel opinion, as candidates for similar circumvention of the rules and judicial precedent.
Our survey of the cases from the various states reveals no reported decision approving an order which either (1) directly required the victim to submit to a physical examination, much less a pelvic examination, or (2) gave the victim a Hobson's choice of the kind sanctioned by the panel in the instant case. If a break is to be made with the firmly established precedent and practice referred to above; if Florida criminal defendants' discovery rights under the Rules of Criminal Procedure (already the most comprehensive in the country) are to be further expanded to include this new and ultra-sensitive area; and if indeed we are to be the pioneer state in leading the rest of the country along this unfortunate path, then I submit that it is the peculiar province of the Florida Supreme Court  not us  to lead the charge.
Clearly, the trial court's order departs from the essential requirements of law, will result in manifest injustice and should be quashed.
ERVIN, BOOTH, WENTWORTH, THOMPSON and MINER, JJ., concur.
WENTWORTH, Judge, concurring with NIMMONS, J.
I agree entirely with the expressed disapproval of the rationale of the trial court in this case.[*] I would also emphasize, even assuming witness examinations may ever be required, that the record here does not substantiate any necessary conflict between the children's statements and initial medical findings, and utterly fails to demonstrate a reasonable defense need for the invasive procedure on the two children in the presence of two doctors and multiple sets of parents, described by the court and defense expert in this case as follows:
THE COURT: And I would assume that we could work it out at a mutually convenient time for you and Dr. Montes to do this if the Court authorizes it at her office.
THE WITNESS: Yes.
THE COURT: I know before we ran into a problem that she didn't have some measuring devices or instruments in her office... . These I assume are instruments that you could bring with you to ensure that you have whatever you felt necessary to be used in conducting the examination, is that correct?
THE WITNESS: Yes, sir. It really does not require a very sophisticated thing. All I need is something that is relatively cone-shaped and can be gently applied to the opening of the vagina and to measure a snug fit.
A careful analysis of the specific facts in controversy shows an ample basis for cross-examination of the witnesses in question, both victims and expert, without a repetitive examination by a physician who expressly states he has no reason to doubt accuracy of the initial report, and asserts no necessity for the examination but simply agrees it would be of value. To suppress an initial medical report  until victims "voluntarily" submit to another physical examination by a defense medical expert  will effectively destroy the present commendable efforts by our legislature *1199 and most trial courts to eliminate repetitive exposure and reduce the victim trauma which is already so disproportionate in this area.
ERVIN, BOOTH, THOMPSON, NIMMONS and MINER, JJ., concur.
ERVIN, Judge, specially concurring.
Although I concur with Judge Nimmons' opinion, which would issue the writ of common law certiorari and quash the trial court's nonfinal order, I wish to clarify the criteria for "exceptional importance" en banc review. I agree that the case on review fails to satisfy that provision of Florida Rule of Appellate Procedure 9.331, relating to maintenance of uniformity of this court's decisions. I consider that the case at bar falls within the "exceptional importance" category, because I regard the panel's decision approving the trial court's order compelling the physical examination of the two victims to conflict with a rule of law announced in certain decisions of the Florida Supreme Court in State v. Smith, 260 So.2d 489 (Fla. 1972), and of the Second District Court of Appeal in State v. Coe, 521 So.2d 373, 375 (Fla. 2d DCA 1988), and Dinkins v. State, 244 So.2d 148, 150 (Fla. 4th DCA 1971), stating that a motion to order a physical examination of a witness on behalf of a defendant in a criminal case should generally be denied unless compelling circumstances exist for the granting of such relief.
I agree with Judge Nimmons' assessment that there has been no demonstration in the record of any compelling circumstances which would require the physical examination of the victims. In my judgment, the purpose behind the defense's motion for the physical examination  to aid the defense in impeaching Dr. Montes' testimony  would be adequately served by the presentation of the conflicting testimony of Dr. Horan, the defense's expert witness. Dr. Horan would testify, assuming the accuracy of Dr. Montes' findings  stating the size of the vaginal opening of one of the two victims measured one-half centimeter and the size of the other measured three-quarters of a centimeter  that Dr. Montes' conclusions, which corroborate the victims' statements that they had been sexually battered, were inconsistent with Dr. Montes' measurements because, in Dr. Horan's opinion, a child's vaginal opening should be no less than 1.5 centimeters in order for full intercourse to have occurred. In light of Dr. Horan's testimony, I fail to see how the respondent would suffer any essential deprivation of his Sixth Amendment right to confront his accusers. As a qualified expert, Dr. Horan could offer his opinion at trial and, if he is correct in his view that the scientific literature on the subject regarding the minimum size of the vaginal opening necessary for the occurrence of adult intercourse is inconsistent with any testimony to the contrary by Dr. Montes, her opinions in that regard could be impeached by the use of such literature. See § 90.706, Fla. Stat. (1987).
Because I am of the view that the defendant has failed to meet the "compelling circumstances" test required by the Florida Supreme Court and the Second District, I consider that the instant case comes within the category of cases authorizing the exercise of this court's en banc jurisdiction on the ground of exceptional importance, in that the panel's decision expressly and directly conflicts with a rule of law announced in decisions of the supreme court, or of other district courts of appeal. Under the theory advanced, I am confident that this court's discretionary right to review a panel's decision en banc on the ground of exceptional importance is, at the very minimum, coextensive with the exercise of the supreme court's discretionary power to review "any decision of a district court of appeal ... that expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law." Art. V, § 3(b)(3), Fla. Const. (1972, amended 1986).
I consider it important in this court's development of the exceptional importance standard for us to attempt, if at all possible, to establish criteria for deciding why a particular case is one of exceptional importance, rather than simply announce in a particular case that the case falls into such *1200 classification without further explanation.[*] Unfortunately, there has to date been no analytical development by the district courts concerning why a particular case merits en banc consideration on the ground of exceptional importance. None of the courts' opinions which have decided to review the cases on that ground have attempted any detailed explanation for their decisions, and a reader is required to make an examination of the facts and issues in each case to determine how the court arrived at its conclusion. See, e.g., State v. Avery, 531 So.2d 182 (Fla. 4th DCA 1988) (trial court erred in determining that the defendant's consent was coerced); Bujarski v. Bujarski, 530 So.2d 953 (Fla. 5th DCA), review denied, 537 So.2d 568 (Fla. 1988) (trial court's consideration of husband's military pension as source of payment of permanent periodic alimony, rather than as marital asset to be equitably distributed, was not an abuse of discretion); Brandt v. Brandt, 525 So.2d 1017 (Fla. 4th DCA 1988) (former wife had right to obtain from sale proceeds of marital home, one-half of expenses therefrom); Ranger Ins. Co. v. Bal Harbour Club, Inc., 509 So.2d 945 (Fla. 3d DCA 1987) (public policy did not prohibit an insured from being indemnified for loss resulting from an intentional act of religious discrimination).
If we do not in future cases attempt to delineate criteria appropriate for our discretionary exercise of en banc review on the ground of exceptional importance, we will continue to face the ever-increasing danger of capricious and promiscuous intervention into the decision-making powers of the appellate courts, placed by Article V, Section 4(a) of the Florida Constitution (1972) in three-judge panels, with the consequence that greater strains will be placed on an already severely burdened judicial system.
I therefore concur with Judge Nimmons' opinion and would grant the petition for writ of certiorari and quash the order entered below.
BARFIELD, Judge, concurring,
The defendant sought from the trial court "an order compelling the children, [C.F.] and [A.H.], to submit to a gynecological examination by Dr. C.A. Horan." After hearing, the trial judge entered an order which reads:
Wherefore, it is the final order and judgment of the Court that Defendant's Motion be, and is, hereby granted and the State be, and is, estopped and enjoined from the prosecution of Defendant upon each of these causes unless and until the State complaining child witness, in any such cause to be prosecuted, shall first submit herself for a physical examination by the Defendant's medical expert, Dr. C.A. Horan, III.
There is neither equivocation nor uncertainty in the judge's ruling. He ordered a physical exam of the alleged victim which is clearly beyond his power. State v. Smith, 260 So.2d 489 (Fla. 1972). This court should grant certiorari and quash the order.
The original panel opinion, and the present position of my colleagues, suggests that the trial judge's order be construed as nothing more than a suppression ruling *1201 because of the absence of compulsory process against two small children and their parents. While such a construction would allow my colleagues to address a question they would like to answer, it ignores the very forceful language of the order.
I am unaware of any requirement that penal sanctions must be imposed against the children or their parents in order to make the order compulsory. This trial judge has cleverly fashioned perhaps the strongest form of compulsion available by denying the right of the State to prosecute an alleged sexual abuser. Either the child victims submit to the will of the court, or their grievance goes unanswered. If this were in fact nothing more than a suppression order, my colleagues should feel compelled to agree to granting certiorari and vacating the part of the order forbidding prosecution as a departure from the essential requirements of law.
I cannot join in any further discussion of alternative theories or treatment of the reviewed order that would purport to construe it as some kind of suppression ruling, which it clearly is not. Upon remand, if the trial judge is presented with a request to suppress any evidence, this court may then have an opportunity to review his decision, either by certiorari or by plenary appeal, depending on the specific lower court ruling.
I consider it quite inappropriate for this court to address an issue not presented. In this case, it is clear that the trial judge granted the defendant's motion which sought to compel the physical examinations in contravention of acknowledged supreme court precedent. Had the trial court denied the requested relief but prohibited the state from using its medical testimony, we would have been presented with an entirely different issue which has not yet been clearly resolved. However, that is not the case here.
ZEHMER, Judge (dissenting).
My views on the merits of the state's petition for certiorari remain as stated in the original panel opinion. Therefore, I cannot join the majority in granting the writ of certiorari and quashing the order. For the reasons stated in that opinion and further amplified in this dissent, I am convinced the majority has misconstrued the intent and effect of the trial court's order by treating it as simply compelling the two children to submit to further medical examination. Likewise, the state's motion for rehearing and for rehearing en banc has mischaracterized both the intent of the trial court's order and the original panel opinion. I concur, however, in certifying the question of great public importance to the supreme court.
The state's motions for rehearing contend that the original panel opinion overlooked or misconceived the facts and law in three respects. The state first complains that the panel erred in denying certiorari and not quashing the trial court's order because the panel failed to comprehend that a criminal defendant has no right to compelled discovery by physical examination of a victim, and that the trial court's order effectively compels such discovery. Second, the state contends that the panel erroneously treated the alleged victims as parties to this criminal action by compelling the two girls to submit to physical examinations. Third, the state asserts that, contrary to the panel opinion, "the trial court has no legal authority to create a right of a criminal defendant to physically examine the body of a witness." These assertions manifest a substantial misunderstanding of the original panel decision.
In the first place, the panel opinion has not treated the two children alleged to be victims as though they were parties to this criminal action. No process has issued from the court purporting to compel them or their parents to do any specific act subject to the imposition of sanctions by the court. On the contrary, the panel opinion is quite explicit that the children and their parents are free to reject any further physical examinations requested by either the state or the defendant.
The panel opinion construed the trial court's order as non-final, in the nature of a ruling on a motion to suppress or similar to a pretrial evidentiary ruling in limine. It *1202 determined that the trial court order had the legal effect of limiting the state's use of evidence based on the voluntary physical examination by Dr. Montes unless the children are also examined by the defendant's gynecologist.[1] This ruling was predicated on the trial court's express finding that such additional evaluation of the medical condition of the children was necessary to avoid undue prejudice and accord the defendant a fair trial.[2] The panel opinion concluded that the trial court was empowered to balance the competing interests of the state and the defendant, and that the court had not so abused that power in exercising its discretion to control the evidentiary issues presented as to violate a clearly established principle of law and result in a miscarriage of justice warranting certiorari review under the standards set forth in State v. Pettis, 520 So.2d 250 (Fla. 1988). As thus construed, the panel decision held the trial court's order did not deprive the state or the victims of essential requirements of the law, and expressly noted that the state was free to proceed with the trial of this case whether or not the children submitted to further physical examination.[3]
The panel opinion recognizes that under the trial court's order as so construed, unless Dr. Horan is permitted to examine the children, the state will be precluded from using opinion testimony by Dr. Montes based on findings from her physical examination of them.[4] To this extent, admittedly *1203 there is compulsion on the state to obtain the parents' consent for a further physical examination of the children. For this reason, the state holds the view that such compulsion is invalid as a matter of law because the trial court has no authority to balance the benefit to the state and the prejudice to the defendant in respect to the state's use of evidence of Dr. Montes's physical examination, and deprive the state from using such evidence; thus, the state would have the order quashed on grounds that it constitutes a departure from the essential requirements of the law.[5] But the panel opinion does not perceive the evidentiary issue before the trial court as a pure question of law not involving the trial court's exercise of discretion to balance the competing interests of the parties. The panel does not accept the notion that there is a rule of law that completely prohibits the court from attaching conditions upon a party's right to use certain evidence such as this. Rather, the panel's view is that a trial judge is always charged with ensuring a fair trial to both sides, and incident to such charge is authorized to regulate the use of evidence to ensure such fairness.[6] The trial court undertook to do only that in this case.[7] Thus, even if that ruling amounted to an erroneous exercise of its discretion, that error in discretion does not rise to the level of "`a violation of a clearly established principle of law resulting in a miscarriage of justice'" so as to be reviewable by certiorari. State v. Pettis, 520 So.2d 250, 254 (Fla. 1988) (trial court ruling that permitted questions of police officer regarding unrelated reprimands, although clearly erroneous, held not to be a departure from the essential requirements of law).
With this clarification of the original panel opinion, I would adhere to the panel decision.
SHIVERS, C.J., and SMITH, JOANOS and WIGGINTON, JJ., concur.
NOTES
[1] This latter date was obviously intended to be December 31, 1986, as all other references in this file and the companion case refer to December 31, not December 13.
[2] Dr. Horan did say on cross-examination that he had no reason to believe Dr. Montes's physical findings regarding the children's genitalia conditions were incorrect. But this statement must be construed in light of his contention that Dr. Montes's findings are not consistent with the children's statements of what had occurred.
[3] In those prior instances where such physical examination has become as important as it is in this case, the hearing transcript reveals through comments by the trial judge that the state and the complaining witnesses have voluntarily submitted to such examinations under conditions similar to those offered by the defendant's doctor and the court in this case.
[1] This new "exclusionary rule" sought to be fashioned by the panel's opinion is particularly egregious because of the fact that the evidence suppressed is in no way tainted by any illegality or impropriety.
[2] Even this court's opinion in Smith  later, as we shall see, to be reversed by the Supreme Court  can hardly be seen as a ringing endorsement of the trial court's order. Stated Judge Rawls:

It is our view that the real question is whether or not the trial judge has so departed from the essential requirements of law that we are called upon to intrude upon the trial court's jurisdiction?
The State in its brief advises that these defendants were indicted on January 28, 1971. Trial date has been set for November 29, 1971. Defendants assert that they have been imprisoned awaiting trial since January of 1971. They are anxious to be tried on November 29, 1971, and are constitutionally entitled to a speedy trial. Under these circumstances, we are not inclined to inject this Court into this stage of the cause in the trial court.
254 So.2d at 404, 405. Parenthetically, I would note that in the instant case the defendant and the state, at the time of the entry of the subject order, stipulated to a waiver of speedy trial for an indefinite period, presumably in order to accommodate appellate review of the order.
[3] Also, lest there be any doubt as to the continuing viability of Smith insofar as its approval of certiorari as an appropriate remedy for addressing an error of this kind, a review of the following cases should remove any such doubt: State v. Pettis, 520 So.2d 250 (Fla. 1988); State v. Cecil, 518 So.2d 919 (Fla. 1988); State v. Filipowich, 528 So.2d 511 (Fla. 3rd DCA 1988). I can think of no more deserving case for the exercise of certiorari jurisdiction than this where there has clearly been a violation of established law resulting in a miscarriage of justice. Pettis, 520 So.2d at 254. It is worth noting that the appellate courts, including ours, have frequently relied upon certiorari in discovery situations wherein a witness or party has been ordered to produce various kinds of information and documents (such as trade secrets, work product, etc.) in which cases injustice will occur because remediation via post-trial plenary appeal would not be available. E.g. Mazda Motor Corporation v. Quinn, 524 So.2d 1021 (Fla. 1st DCA 1989) (on rehearing); Landrum v. Tallahassee Memorial Regional Medical Center, 525 So.2d 994 (Fla. 1st DCA 1988); Bay Medical Center v. Sapp, 535 So.2d 308 (Fla. 1st DCA 1988); Granville v. Granville, 445 So.2d 362 (Fla. 1st DCA 1984). Such exercise of certiorari jurisdiction has been held to be entirely consistent with the Supreme Court's opinion in Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla. 1987). See Mazda Motor Corporation, supra; Pearce v. Doral Mobile Home Villas, Inc., 521 So.2d 282 (Fla. 2nd DCA 1988). How much more deserving of our certiorari attention is a case such as this where the subject order either bars the state from further prosecution or, as construed by the panel, precludes the state from using perfectly legitimate, competent and relevant evidence, with no opportunity to raise the trial court's clear departure from established law, either by appeal after trial or otherwise? As observed by the Supreme Court in Pettis:

If a nonfinal order does not involve one of the subjects enumerated in Florida Rule of Appellate Procedure 9.140(c)(1), the state would not be able to correct an erroneous and highly prejudicial ruling. Under such circumstances, the state could only proceed to trial with its ability to present the case significantly impaired. Should the defendant be acquitted, the principles of double jeopardy prevent the state from seeking review; thus, the prejudice resulting from the earlier order would be irreparable. The filing of a petition for certiorari is an apt remedy under these circumstances.
520 So.2d at 253.
[4] Fla.R.Civ.P. 1.360.
[5] See, for example, the following sections from Florida Statutes:

Section 914.16  Child abuse and sexual abuse victims under age 16; limits on interviews.
Section 92.53  Sexual abuse or child abuse case; videotaping of testimony of victim or witness under age 16.
Section 92.54  Use of closed circuit television in proceedings involving sexual offenses against victims under the age of 16.
Section 92.55  Judicial or other proceedings involving child victim or witness under the age of 16; special protections.
Section 90.803(23)  Hearsay exception; statement of child victim of sexual abuse or sexual offense against a child.
[6] Actually, it is defense counsel, not the victims, who has characterized the penetration in this case as "full sexual intercourse." The descriptions by the victims of what the defendant did to them are not at all inconsistent with the minimal penetration contemplated by the sexual battery statute and case law.
[7] The trial judge said that "the State ought not to be able to examine and have its own expert evaluate evidence and then the defense be excluded from having its expert examine and evaluate the same evidence."
[8] It is interesting to note that Dr. Montes, for some time prior to this case, had a physician/patient relationship with C.F. The question arises as to whether the panel's opinion would apply to situations where the initial pelvic examination is carried out by the victim's family doctor at the sole instance of the victim or her family. Would the testimony of such family doctor  like the testimony of the Child Protection Team physician  be suppressed where the victim refuses to submit to another examination by a defense doctor?
[*] The obvious effect of the panel disposition was to grant the writ and revise the order, since it is clear that absent issuance of the writ there exists no vehicle for the exercise of appellate review.
[*] The need for a careful determination of why a given case merits en banc consideration on the ground of exceptional importance is obvious: a request for en banc consideration of a case engages the attention of every active judge, while burdening the litigants involved with added expense or delay. As Chief Judge Kaufman commented in Gilliard v. Oswald, 557 F.2d 359 (2d Cir.1977), regarding the proper application of Federal Rule of Appellate Procedure 35, containing language substantially similar to Florida's en banc rule:

The future effectiveness of the over-burdened federal courts depends in large measure upon wise allocation of judicial energy. Extension of the en banc rehearing procedure in an era of increasingly congested dockets is an extravagance we simply cannot afford. F.R.A.P. 35 instructs that the en banc mechanism is "not favored" and strictly limits its use to cases of "extraordinary importance" or to resolve a clear and direct conflict between the decisions of different panels of the court. In practice en bancs are time-consuming and cumbersome, and only rarely produce dispositive resolution of major, recurring issues. The proliferation of opinions which is not rare in an en banc decision, usually obfuscates rather than clarifies.
Id. at 359.
[1] The panel decision is predicated upon the fact that the examinations performed by Dr. Montes were not done for purposes of medical treatment but solely in response to the directive of the law enforcement agency. Dr. Montes's report on one child (A.H.) was typed on the letterhead of the Child Protection Team for that area and described her undertaking as a "pediatric evaluation" performed upon referral by the Santa Rosa County Sheriff's office. (R. 18). The trial court order recites "that each of the complaining child witnesses have previously been voluntarily examined by the State's medical expert at the request of, and upon direction of local law enforcement... ." (R. 27). Although the father of one of the children (C.F.) testified that she had been taken to Dr. Montes on a prior occasion because she was sick, it was not for purposes of a vaginal examination (R. 48), and the child's mother (who was defendant's girlfriend and consented to the examination by Dr. Horan) took her there on that occasion. This testimony does not establish that Dr. Montes was her regular pediatrician or that the examination at the request of the sheriff's office was for treatment purposes.
[2] The trial court's finding of such compelling need is not dissipated by reference to the fact that Dr. Horan could testify in contradiction of Dr. Montes's measurements without making further examination of the children. This observation presupposes that the only purpose of further examination would be to measure the hymenal opening. But Dr. Horan stated that examination of the condition of the genitalia, including the presence and condition of scar tissue, would be important to his opinion testimony. If the decision on this issue is to be made in fear of anticipated resourcefulness of counsel, it takes little if any imagination to predict that the prosecutor's questioning of Dr. Horan at trial will establish that Dr. Horan's opinion is being expressed, unlike that of Dr. Montes, without the benefit of physically examining the children, and thus lacks a comparable basis for credibility. The record contains ample showing of the necessity for a physical examination of the children by a gynecologist that is sufficient to support the trial court's finding; and speculation regarding various ways for Dr. Horan's testimony to be presented without making a physical examination does not overcome the trial court's finding of fact on this issue.
[3] Of course, the order would have to be quashed if construed as prohibiting the state from proceeding with the prosecution unless and until the children submitted to further physical examination. Had the opinion so construed the order, certiorari should have been granted and the order quashed without reaching the issue of whether the trial court could condition the state's use of certain evidence on the availability of further physical evaluation by a gynecologist. Obviously, the trial court's order was primarily concerned with setting up this latter issue for appellate review before trial, and the panel's decision gave effect to that intent in construing the order. The trial judge's comments on the transcript of the hearing (R. 77-78, 85) indicate that the primary purpose of the ruling was to prevent the state from using evidence of the physical examinations if the defendant were not accorded the same right of physical examination as the state.
[4] Nothing stated in the original panel opinion or this opinion should be taken as a suggesting that Dr. Montes, a pediatrician, is qualified to testify as an expert witness in the field of gynecology, or that she is qualified to express diverse expert opinions based on the findings from her physical examination of the children. Those issues must await the trial, and were not before the trial court for pre-trial decision on the defendant's motion. Nor are such issues before the court on this appeal. To some extent, therefore, the trial court's order under review may well be considered premature because necessarily dependent upon the court's rulings regarding Dr. Montes's testimony at trial.
[5] In taking this position, the state overlooks the uniqueness of the circumstances in this case, as discussed in the panel opinion, and is impelled to that conclusion by the accepted notion that a witness in a criminal case cannot lawfully be compelled to submit to such a physical examination. As previously discussed, however, application of this notion begs the question, as we are reviewing the exercise of a trial court's discretion. Further, it disregards the voluntary waiver of the children's right to reject a physical examination by their submitting to the examination by Dr. Montes in support of the state's prosecutorial efforts.
[6] Consonant with this charge, evidence ruled to be relevant may be excluded at trial if its probative value is outweighed by the danger of unfair prejudice to the defendant. See § 90.403, Fla. Stat. (1987).
[7] The trial court was evidently concerned about depriving the defendant of an opportunity to prove the offenses could not have occurred as alleged by the state and contended by the victims due to physical impossibility discernible through physical examination of the condition of the body tissue by the defendant's gynecologist.